UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF MASSACHUSETTS

C.A. NO.

|  |  |
|---|---|
| DANIEL HOUDE, | ) |
| Plaintiff, | ) |
| v. | ) **05-40075 FDS** |
| ROBERT TURGEON, STEPHEN GUNNERSON, KEVIN JOHANSON, MATTHEW D'ANDREA, BRIAN HALLORAN, THOMAS DUFFY, SEAN MCCANN and CITY OF WORCESTER | ) RECEIPT # 404570<br>) AMOUNT $ 250.00<br>) SUMMONS ISSUED ✓<br>) LOCAL RULE 4.1 ✓<br>) WAIVER FORM ✓<br>) MCF ISSUED ✓ |
| Defendants. | ) BY DPTY. CLK _____<br>) DATE 5/17/05 |

## COMPLAINT

For his Complaint in the above-referenced matter, Plaintiff Daniel Houde states as follows:

**I.    Introduction**

This action seeks compensation for defendants' violations of plaintiff's civil rights and state law. In essence, Daniel Houde seeks to recover for the unlawful arrest and vicious beating levied against him at the hands of the named defendants. At the time of the beating, the individually named defendants were acting under color of state law in their capacities as Police Officers for the City of Worcester, Massachusetts. The beating inflicted upon Mr. Houde by these seven officers left Mr. Houde, a 5 foot, 9 inch, 155 pound man who was unarmed during the incident, with nine broken bones in his face as well as injuries to his back, forehead, eyes, hands, legs, knees, and arm.

**II.    Parties**

1.    Plaintiff Daniel Houde ("Mr. Houde") is a citizen of the United States of America with and formerly resided at 121 Worcester Street, North Grafton, Massachusetts.

2.    Upon information and belief, Defendant Robert Turgeon ("Officer Turgeon") is a citizen of the United States of America and, at all times relevant to this Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

3.    Upon information and belief, Defendant Stephen Gunnerson ("Officer Gunnerson") is a citizen of the United States of America and, at all times relevant to this Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

4.    Upon information and belief, Defendant Kevin Johanson ("Officer Johanson") is a citizen of the United States of America and, at all times relevant to this Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

5.    Upon information and belief, Defendant Matthew D'Andrea ("Officer D'Andrea") is a citizen of the United States of America and, at all times relevant to this Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

6.    Upon information and belief, Defendant Brian Halloran ("Officer Halloran") is a citizen of the United States of America and, at all times relevant to this

Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

7. Upon information and belief, Defendant Thomas Duffy ("Officer Duffy") is a citizen of the United States of America and, at all times relevant to this Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

8. Upon information and belief, Defendant Sean McCann ("Officer McCann") is a citizen of the United States of America and, at all times relevant to this Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

9. Upon information and belief, Defendant City of Worcester is a city incorporated under the laws of the Commonwealth of Massachusetts and employed each of the named defendants at all times relevant to the allegations in this Complaint.

**III.   Jurisdiction and Venue**

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1343 (a)(3), 28 U.S.C. §1331 and 28 U.S.C. §1367.

11. Venue is appropriate in this Court because the Plaintiffs and all Defendants live or work within the County of Worcester in the District of Massachusetts, Central District.

**IV.   Facts Common To All Counts**

12. Mr. Houde was formerly a resident, property owner and businessman in the City of Worcester.

13. In or around 1998, Mr. Houde began a mobile food kitchen business which conducted business under the trade name "Mr. Funtimes".

14. The business focused on the sale of hot dogs and other fast food items outside of popular local venues such as the Palladium and Atrium in Worcester, Massachusetts.

15. The mobile food kitchen business was successful and became a locally well-known and popular pre- and post-event venue.

16. Mr. Houde's business was doing so well that the owners of the Palladium, Jack Fisher and John Souza, took particular note of Mr. Houde's operation.

17. Eventually, Mr. Fisher and Mr. Souza offered Mr. Houde a business deal in which they agreed to renovate the first floor of the Palladium into a pizza shop and Mr. Houde agreed to manage the pizza shop. As part of this deal, Mr. Houde agreed to remove his food trucks from the street near the Palladium.

18. Mr. Houde spent several weeks assisting in the renovation of the pizza shop and prepared to run the shop for the Palladium.

19. Once renovations began, however, Mr. Fisher and Mr. Souza announced to Mr. Houde that a new ownership group was involved with the Palladium and that Mr. Houde's services would no longer be needed.

20. Mr. Houde was disappointed but undeterred.

21. Mr. Houde treated the termination of the Palladium agreement as an opportunity.

22. Mr. Houde went back to the mobile food kitchen business.

23. Indeed, Mr. Houde purchased two additional mobile food trucks and hired additional drivers to man those trucks.

24. At times relevant to the allegations in this Complaint, the Palladium and two other night clubs owned by Mr. Fisher and Mr. Souza employed on-duty and off-duty officers of the Worcester Police Department.

25. Shortly after the deal with the Palladium fell through, Mr. Houde was back operating his mobile food trucks outside the Palladium.

26. Mr. Houde's after-hours food business fared much better than the pizza business in the Palladium.

27. Throngs of persons leaving the Palladium would line up at Mr. Houde's mobile food truck, while the Palladium's pizza business suffered.

28. The operators of the Palladium's pizza store grew agitated with Mr. Houde and often confronted Mr. Houde outside their shop.

29. At this same time, Mr. Houde and his other drivers suddenly began experiencing harassing treatment from the Worcester Police Department.

30. On several occasions, Mr. Houde and his other truck drivers were stopped, without cause, and were threatened and intimidated by Worcester Police officers.

31. One of Mr. Houde's drivers quit due to one such incident.

32. During this time period, Mr. Houde also became aware that the father of a Worcester Police Officer (believed to be Robert Farrell) owned a hot dog truck called "Munchtimes" that competed with Mr. Houde's trucks at Worcester events. This man often confronted Mr. Houde at Worcester events and jockeyed with Mr. Houde for

positions outside of them. At times he requested his son, or other Worcester Police officers, to intercede on his behalf against Mr. Houde.

33. Officer Farrell, who was the son of Mr. Houde's competition, and his colleagues began to harass and personally intimidate Mr. Houde on a regular basis in the City of Worcester.

34. At various times, Worcester Police Officers would stop and detain Mr. Houde's trucks for no reason.

35. On some of these occasions, these officers would simply harass Mr. Houde or his drivers and let them proceed.

36. At other times, these police officers would create false reasons for the traffic stop. On one such occasion, an officer claimed that one of Mr. Houde's head lights was "out." When Mr. Houde responded that "my head lights are working," the officer walked to the front of his automobile and broke a head light with his night stick.

37. On October 9, 2001, Mr. Houde was arrested by a Worcester Police Officer named Robert Ferra allegedly for possession of marijuana. During that arrest, Mr. Ferra said to Mr. Houde: "My advice to you is to pack up your business and get out of this city."

38. In 2002, the harassment and intimidation continued and, clearly, became an effort to drive Mr. Houde out of business.

39. In the spring of 2002, Steven Walsh, the owner of a fabrication shop in Worcester who did work on Mr. Houde's vehicles, said: "The 'henchmen' are after you."

40. Mr. Houde made the mistake of not comprehending that warning.

41. On the evening of May 20, 2002, Mr. Houde was out with an acquaintance, Renee Rudy.

42. On that night, Mr. Walsh who worked late at the fabrication shop, telephoned Mr. Houde and told him to bring his truck to the fabrication shop on Grafton Street for work Mr. Houde had requested. It was not unusual for this shop to commence work during such late hours.

43. Mr. Houde and Ms. Rudy exited the establishment they were at and entered his vehicle – a camper that was to be converted to a mobile food truck by the fabricator.

44. Mr. Houde noticed two Worcester police cruisers go by his vehicle.

45. Mr. Houde then drove about two hundred yards to where the fabrication shop is located and pulled up to the fabricator's loading dock in its back parking lot.

46. Suddenly, several Worcester police cruisers surrounded Mr. Houde's vehicle.

47. Officers approached the driver's and passenger's side doors of Mr. Houde's vehicle. The officers shouted: "Open the door or we'll smash the windows." These officers never asked for Mr. Houde's driver's license or registration.

48. Before Mr. Houde could respond, two other police officers broke into the back of his vehicle.

49. These officers ran to the front of the vehicle and began to ferociously beat Mr. Houde about the head and the face without any warning or provocation. The officers used their fists, their shod feet and flashlights during the beating until Mr. Houde was no longer conscious.

7

50. Mr. Houde was unarmed. Yet, all of the named defendant police officers participated in the beating and dragged Mr. Houde's body from his vehicle.

51. One of these officers also sprayed Mr. Houde with pepper spray.

52. Despite the beating inflicted on Mr. Houde, the Defendant officers conspired to press charges against Mr. Houde to cover-up their wrongdoing.

53. Indeed, three of the officers claimed that Mr. Houde had assaulted and battered them.

54. None of the officers received any medical treatment at any hospital for the alleged altercation with Mr. Houde.

55. Despite the injuries inflicted on Mr. Houde, the officers decided to initially bring Mr. Houde to the police lock-up. Photographs of Mr. Houde within the days following the beating are attached hereto as Exhibit 1. Yet, when the dispatch officer witnessed Mr. Houde's condition, he immediately advised his colleagues to transport Mr. Houde to the hospital.

56. Instead, the officers transported Mr. Houde to the University of Massachusetts Medical Center.

57. Among other injuries, Mr. Houde sustained nine bi-lateral fractures to his face as a result of the beating.

58. When Mr. Houde arrived for his arraignment in Court the next day, the sitting judge was so horrified by Mr. Houde's appearance that he exclaimed: "Who did this to the Defendant." The judge also refused to arraign Mr. Houde and, instead, mandated that he be transported back to the hospital for further treatment.

59. Three days after the incident, on or about May 23, 2002, Mr. Houde's prior counsel served a letter upon the City of Worcester putting the City of Worcester on Notice of Mr. Houde's claim as required by G.L. 258 § 4. On July 17, 2002, the City of Worcester made a final denial of Mr. Houde's claim.

60. On May 21, 2002, the Worcester Superior Court probation department sought a surrender hearing against Mr. Houde on a 1999 matter due to the May 20, 2002 arrest by the officers in this matter.

61. Upon information and belief, the Defendants knew that Mr. Houde was on probation at the time of their assault upon him and knew that bringing the charges against him for the May 20, 2002, incident would instigate a "violation" of his probation.

62. As a result, Mr. Houde was given a Hobbesian choice: fight the false charges brought by the Defendants for the May 20, 2002 incident and be surrendered on the 1999 charges or plead out to the false charges and receive a lighter overall sentence.

63. Put in this untenable situation (which Plaintiff believes was manipulated by the Defendants in order to provide a defense to Mr. Houde's present claims), Mr. Houde was forced against his will to plea out to the false charges brought by the Defendants in this matter.

**V.   Causes of Action**

**COUNT I**
(Violation of 42 U.S.C.A. 1983, Civil Rights Act v. Robert Turgeon, Stephen Gunnerson, Kevin Johanson, Matthew D'Andrea, Brian Halloran, Thomas Duffy and Sean McCann)

64. Mr. Houde restates and realleges each of the above paragraphs and incorporates them herein by reference.

65. Defendants Turgeon, Gunnerson, Johanson, D'Andrea, Halloran, Duffy and McCann, engaged in a conspiracy to deprive Mr. Houde of his civil rights, including but not limited to unlawful stops, harassment, searches and seizures of Mr. Houde, the deprivation of Mr. Houde's liberty and property without due process of law, the false imprisonment of Mr. Houde, abuse of process against Mr. Houde, the assault and battery of Mr. Houde, the cruel and unusual punishment of Mr. Houde, and the deprivation of Mr. Houde's Constitutional rights to due process.

66. In taking the unlawful actions described in this Complaint, Defendants Turgeon, Gunnerson, Johanson, D'Andrea, Halloran, Duffy and McCann, acted under the color of local and state law, including the authority granted in them as police officers by the City of Worcester and the Police Department of the City of Worcester.

67. Defendants' acts and practices subjected Mr. Houde, or caused Mr. Houde to be subjected, to the deprivation of the rights, privileges and immunities secured by the United States Constitution and laws of the United States, including but not limited to his rights under the First, Fourth, Eighth and Fourteenth Amendments to United States Constitution.

68. Mr. Houde is entitled to be compensated for the violations of his civil rights as provided in 42 U.S.C.A 1983 et seq. and as otherwise allowed at law and in equity in an amount to be determined at trial.

### COUNT II

(Intentional Infliction of Emotional Distress v. Robert Turgeon, Stephen Gunnerson, Kevin Johanson, Matthew D'Andrea, Brian Halloran, Thomas Duffy and Sean McCann)

69. Mr. Houde restates and realleges each of the above paragraphs and incorporates them herein by reference.

70. Through the conduct alleged in this Verified Complaint, Defendants Turgeon, Gunnerson, Johanson, D'Andrea, Halloran, Duffy and McCann intended to inflict emotional distress upon Mr. Houde or knew or should have known that emotional distress was likely to result from their conduct.

71. Defendants' conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community.

72. Defnedants' conduct caused Mr. Houde to suffer extreme emotional distress.

73. Mr. Houde's emotional distress was severe and of a nature that no reasonable person could be expected to endure it. Mr. Houde suffered both physical and emotional harm as a result of the conduct of Defendants Turgeon, Gunnerson, Johanson, D'Andrea, Halloran, Duffy and McCann.

74. Mr. Houde seeks compensation for the harm inflicted upon him in an amount to be determined at trial.

## COUNT III

(Intentional Interference With Prospective Business Relationships v. Robert Turgeon, Stephen Gunnerson, Kevin Johanson, Matthew D'Andrea, Brian Halloran, Thomas Duffy and Sean McCann)

75. Mr. Houde restates and realleges each of the above paragraphs and incorporates them herein by reference.

76. Mr. Houde had prospective business relationships with persons that frequented his mobile food business. These relationships carried with them the probability of future economic benefit to Mr. Houde.

77. Defendants knew about these prospective business relationships and intentionally interfered with these relationships through the actions described in this Verified Complaint – which included Mr. Houde's unlawful incarceration and the total loss of his business. The Defendants' actions purposefully prevented Mr. Houde from acquiring or fulfilling his prospective business relationships.

78. The interference with Mr. Houde's prospective business relationships was intentional and improper in motive and means. In particular, on the foregoing information Mr. Houde believes that Defendants Turgeon, Gunnerson, Johanson, D'Andrea, Halloran, Duffy and McCann intended to drive Mr. Houde out of business in order to allow other businesses an improper competitive advantage.

79. Mr. Houde has been harmed by the interference with his prospective business relations and is entitled to be fully compensated for all harm caused by this interference in an amount to be determined at trial.

## COUNT IV

(Abuse of Process v. Robert Turgeon, Stephen Gunnerson, Kevin Johanson, Matthew D'Andrea, Brian Halloran, Thomas Duffy and Sean McCann)

80. Mr. Houde restates and realleges each of the above paragraphs and incorporates them herein by reference.

81. Defendants used legal process to bring criminal complaints against Mr. Houde regarding the May 20, 2002 incident.

82. Defendants' use of legal process was for the illegitimate and ulterior purpose of providing a defense to their unlawful violation of Mr. Houde's civil rights.

83. Defendants' unlawful abuse of process resulted in damage to Mr. Houde in an amount to be determined at trial.

## COUNT V

(False Imprisonment v. Robert Turgeon, Stephen Gunnerson, Kevin Johanson, Matthew D'Andrea, Brian Halloran, Thomas Duffy and Sean McCann)

84. Mr. Houde restates and realleges each of the above paragraphs and incorporates them herein by reference.

85. Defendants exercised unlawful confinement of Mr. Houde, including, Mr. Houde's confinement both during and after his unlawful arrest.

86. The unlawful confinement of Mr. Houde was intentional.

87. Mr. Houde was conscious of the confinement exerted against him.

88. Mr. Houde has been damaged by his false imprisonment in an amount to be determined at trial.

## COUNT VI

(Assault and Battery v. Robert Turgeon, Stephen Gunnerson, Kevin Johanson, Matthew D'Andrea, Brian Halloran, Thomas Duffy and Sean McCann)

89. Mr. Houde restates and realleges each of the above paragraphs and incorporates them herein by reference.

90. Defendants engaged in an unlawful assault and battery of Mr. Houde as described in detail above.

91. Defendants first put Mr. Houde in fear of offensive contact of his body and then inflicted a severe beating of Mr. Houde's body.

92. Defendants' assault and battery resulted in numerous broken bones and other injuries.

93. Mr. Houde has been damaged by the assault and battery inflicted upon him in an amount to be determined at trial.

## COUNT VII

(Libel v. Robert Turgeon)

94. Mr. Houde restates and realleges each of the above paragraphs and incorporates them herein by reference.

95. Officer Turgeon published defamatory and libelous statements of and concerning Mr. Houde, including those statements included in his purported Worcester Police Department Incident Report dated May 21, 2001.

96. Officer Turgeon knew that these statements were false when they were published.

97. Officer Turgeon's statements were of a nature that would offend a considerable and respectable class in the community in that they wrongfully stated that Mr. Houde had committed crimes which he did not commit.

98. Officer Turgeon's false statements concerned Mr. Houde's character and impugned his reputation.

99. Officer Turgeon's statements were intended to harm Mr. Houde.

100. Mr. Houde suffered financial loss and a loss of liberty as a result Officer Turgeon's defamation and seeks to be compensated for those losses in an amount to be determined at trial.

## COUNT VIII
(Violation of 42 U.S.C.A. 1983, Civil Rights Act v. City of Worcester)

101. Mr. Houde restates and realleges each of the above paragraphs and incorporates them herein by reference.

102. Upon information and belief, the unconstitutional actions of Defendants Turgeon, Gunnerson, Johanson, D'Andrea, Halloran, Duffy and McCann implemented or

executed a policy, statement, or decision officially adopted and promulgated by the City of Worcester.

103. The individual Defendants' practices and actions aimed at Mr. Houde appear to be so well settled by the City of Worcester that they constitute a custom or usage by City of Worcester Police Department and its officers and they carry the force of law. These customs and practices were so pervasive that, upon information and belief, City of Worcester policy makers had actual or constructive knowledge of and acquiesced to the unconstitutional customs and practices.

104. In addition, the City of Worcester, upon information and belief, failed to properly train, supervise, and discipline its employees to prevent these customs and practices from manifesting themselves through the City of Worcester's police officers.

105. Mr. Houde is entitled to be compensated for the violations of his civil rights as provided in 42 U.S.C.A 1983 et seq. and as otherwise allowed at law and in equity in an amount to be determined at trial.

## VI.  Jury Demand

Mr. Houde hereby demands a trial by jury on all counts so triable.


**WHEREFORE**, Mr. Houde requests that this Honorable Court:

1. Enter judgment in favor of Mr. Houde on each count stated herein;

2. Award Mr. Houde all damages, costs, interest and attorney's fees recoverable at law and in equity; and

3. Award such other and further relief as is just and proper.

Respectfully submitted,

**PLAINTIFF DANIEL HOUDE,**

By his attorney,

_____
Timothy J. Perry (BBO #631397)
PRETI FLAHERTY LLP
10 High Street, Suite 502
Boston, MA 02110
(617) 226-3800
facsimile (617) 226-3801









05-40075

≈JS 44 (Rev. 11/04)                                  CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Daniel Houde

**DEFENDANTS**
Robert Turgeon, Stephen Gunnerson, Kevin Johanson, Matthew D'Andrea, Brian Halloran, Thomas Duffy, Sean McCann, and City

(b) County of Residence of First Listed Plaintiff   Worcester
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Worcester
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Timothy J. Perry, Preti Flaherty LLP, 10 High Street, Boston, MA 02110
(617) 226-3800

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC 1983
Brief description of cause:

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE  5-13-05
SIGNATURE OF ATTORNEY OF RECORD  [signature]

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

05-40075

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Daniel Houde v. Robert Turgeon, et al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   [✓] I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   [✓] II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

   [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   [ ] IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   [ ] V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   N/A

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]   NO [✓]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [✓]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [✓]   NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [ ]   Central Division [✓]   Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Timothy J. Perry
ADDRESS  Preti Flaherty, LLP, 10 High Street, Suite 502, Boston, MA 02110
TELEPHONE NO.  (617) 7412-9012

(CategoryForm.wpd - 5/2/05)