UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DANIEL HOUDE, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. NO. 05-40075FDS |
| | ) | |
| ROBERT TURGEON, STEPHEN | ) | |
| GUNNERSON, KEVIN JOHANSON, | ) | |
| MATTHEW D'ANDREA, BRIAN | ) | |
| HALLORAN, THOMAS DUFFY, SEAN | ) | |
| MCCANN and CITY OF WORCESTER | ) | |
|     Defendants | ) | |
| | ) | |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1.    On May 20, 2002, Worcester Police Officer Robert Turgeon ("Officer Turgeon" or "Turgeon") observed a camper operating on Grafton Street, Worcester, Massachusetts with two different license plates on the front and back of the vehicle.  (Officer Turgeon's report, attached as Exhibit A).

2.    Officer Turgeon activated his lights and attempted to pull over Plaintiff's vehicle.  (Exhibit A).

3.    Plaintiff's vehicle pulled off of Grafton Street and into a parking lot behind Frank's Flower Shop.  (Exhibit A and Plaintiff's Complaint, ¶ 45).

4.    Officer Turgeon called the police dispatcher to request assistance.  (Exhibit A).

5.    Officer Turgeon states that he approached the driver's side door of the camper to request Plaintiff's license and registration.  (Exhibit A).

6.    Defendants state that Plaintiff refused to comply with commands to produce a license and registration and to unlock the doors and get out of the vehicle.  (Exhibit A).

7.    As a result, Defendant Johanson entered the camper from the rear door and forcibly removed Plaintiff from the camper through the rear door.  (Exhibit A).

8.    Plaintiff resisted being removed from the camper and resisted arrest; and, in the struggle, Plaintiff assaulted and battered three police officers.  (Exhibit A; and, see criminal docket report, attached hereto as Exhibit B).

9.    While Plaintiff was resisting arrest, he was struck twice in the face by Officer Gunnerson who was trying to extricate his arm from underneath Plaintiff's body and trying to avoid being bitten by Plaintiff and/or by a dog that was on the scene that Plaintiff was inciting.    (See deposition testimony of Officer Gunnerson, pp. 80-88, attached hereto as Exhibit H).

10.    While Plaintiff was resisting arrest, he was sprayed with OC spray in an effort to subdue and handcuff him.    (Exhibit A and Plaintiff's Complaint, ¶ 51).

11.    Officer Turgeon made out an application for criminal complaint against Plaintiff, charging him with the following: (a) possession of a Class B substance; (b) assault and battery with a dangerous weapon (shod foot); (c-e) three counts of assault and battery on a police officer; (f) resisting arrest; (g) failure to stop for a police officer; (h) improperly attaching plates; (i) operating an uninsured motor vehicle; and (j) operating an unregistered motor vehicle.    (See application for criminal complaint, attached hereto as Exhibit C).

12.    A criminal complaint issued against Plaintiff, and Plaintiff ultimately pled guilty and/or responsible to all charges brought against him.    (Exhibits B and C).

13.    Plaintiff's guilty plea as to all charges was done freely and voluntarily and with the advice and assistance of counsel. (See Plaintiff's waiver of rights, attached as part of Exhibit B).

                              Respectfully submitted,

                              Robert  Turgeon,  Stephen  Gunnerson,
                              Kevin  Johanson,  Matthew  D'Andrea,
                              Brian  Halloran,  Thomas  Duffy,  Sean
                              McCann and City of Worcester,

                              By their attorneys,

                              David M. Moore
                              City Solicitor


                              /s/ Janet J. McGuiggan
                              Assistant City Solicitor
                              City of Worcester
                              City Hall, Room 301
                              455 Main Street
                              Worcester, MA 01608
                              (508) 799-1161
                              BBO #630013

2

<u>CERTIFICATE OF SERVICE</u>

I, Janet J. McGuiggan, hereby certify that, on this 12th day of February, 2007, the within document was filed through the ECF electronic filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


<u>/s/ Janet J. McGuiggan</u>
Janet J. McGuiggan

# **EXHIBIT A**

Worcester Police Department
Incident Report

May 20, 2002                                                           Monday 03:26

Single Narrative

| INCIDENT LOCAL # PRIORITY ACC REP | ACTIVITY ADDRESS (JURISDICTION) DISPOSITION | OFFICER(S) | RECEIVED DISPATCHED ARRIVED CLEARED | DISPATCHER SUPERVISOR NATURE INCIDENT TYPE |
|---|---|---|---|---|
| I0254157 4 No    No | PATROL INITIATED 165 GRAFTON ST Cross: 1 CORAL ST @156 1 PENN AV @208 WORCESTER, MA, 01604 (04) ARREST | TURGEON GUNNERSONS JOHANSONKR DANDREAMD HALLORAN | 05/20/2002, 00:43 05/20/2002, 00:44 05/20/2002, 00:45 05/20/2002, 01:13 | COLES SUSPICIOUS MV DISORDERLY PERS CT: COLES |

Caller's Info: 06L OTA

Reported as: SUSPICIOUS MV        Found as: DISORDERLY PERS
Domestic Abuse: No

Dispatcher Remarks:
       06L CALLED OUT W/CAMPER PLATE MA REG#89092...JDC./... 1 PERSON IN
       CUSTODY...JDC./... @0046 - RT09L CALLED OUT FOR THE WAGON - CELLROOM
       NOTIFIED AND OTW....JDC./... PER RT08L - 1 W/F W/BROWN HAIR AND EITHER A
       BLUE OR BLACK COAT RAN FROM THE SCENE...SEARCHING THE AREA FOR THE FEMALE.
       JDC./.... PER RT08L - THE FEMALE HEADED UP CORAL ST...JDC./.... SHE IS
       MEDIUM TO HEAVY BLD...POSS. TRYING TO HEAD BACK TO ORIENT ST...JDC./....
       WAGON 84 HEADED TO CHARLIES TO PICK UP FEMALE ...COMP ARREST....BS CHARLIES
       LOC AT 240 GRAFTON...BS S/M 82614...BS E/M 82615...BS

| | | |
|---|---|---|
| ARRESTED (Female) M0037351 | RUDY, RENEE E * 9 FREELAND ST  Apt: 2R WORCESTER MA  01603 Phone: 508-363-3942    Race: WHI Commt: ARRESTED: SUSPICIOUS MV | License: 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   (MA) SSN: 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 DOB: 10/28/1968 Age: 33 |
| ARRESTED (Male) M9541178 | HOUDE, DANIEL J * 18 ORIENT ST   Apt: 1 WORCESTER MA  01604 Phone: 754-3477      Race: WHI Commt: ARREST- M.V. / 94C | License: S94563027   (MA) SSN: 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 DOB: 03/14/1964 Age: 38 |
| VICTIM (Male) M0080319 | TURGEON, ROBERT 911 LINCOLN ST WORCESTER MA  01605 Phone: 799-8669 Commt: VICTIM A&B | License: None DOB: None Recorded |
| VICTIM (Male) M9907826 | GUNNERSON, STEPHEN 911 LINCOLN SQ WORCESTER MA  01608 Phone: 799-8669    Race: WHI Commt: VIC. A&B D.W. | License: None DOB: None Recorded |

Single Narrative

| INCIDENT<br>LOCAL #<br>PRIORITY<br>ACC REP | ACTIVITY<br>ADDRESS (JURISDICTION)<br>DISPOSITION | OFFICER(S) | RECEIVED<br>DISPATCHED<br>ARRIVED<br>CLEARED | DISPATCHER<br>SUPERVISOR<br>NATURE<br>INCIDENT TYPE |
|---|---|---|---|---|

Incident I0254157 (continued)

Persons:

| | | |
|---|---|---|
| VICTIM<br>(Male)<br>M9713688 | HALLORAN, BRIAN<br>9 LINCOLN SQ<br>WORCESTER MA 01608<br>Phone: 799-8669    Race: WHI<br>Commt: VIC. A&B | License: 034667763 (MA)<br><br>DOB: 04/22/1971 Age: 31 |

| | | |
|---|---|---|
| VICTIM<br>(Male)<br>M9928587 | JOHANSON, KEVIN<br>911 LINCOLN SQ<br>WORCESTER MA 01608<br>Phone: 799-8620<br>Commt: VIC. A&B | License: None<br><br>DOB: None Recorded |

Narrative(s):

Narr. 1: PO ROBERT TURGEON    Division: None    Status: Open    [I0254157]
   Title: ARREST NARRATIVE    Entered: PO ROBERT TURGEON    Date: 05/20/02
                     Reviewed: No officer            Edit: 05/20/02

    ON 05/20/02 AT APPROXAMETLY 0043 HRS. I WAS ON PATROL IN A MARKED CRUISER
ON GRAFTON ST. WHEN I OBSERVED A FORD CAMPER TRAVELING WEST ON GRAFTON ST. WHEN
I NOTICED THAT THE LICENSE PLATE ATTACHED TO THE REAR OF THE CAMPER, MA. 89092,
WAS HANGING OFF. THE M.V. PULLED INTO A GAS STATION AT 263 GRAFTON ST. I PULLED
INTO THE SAME PARKING LOT AND NOTICED THAT THE FRONT PLATE. MA. 82903, WAS
DIFFERENT FROM THE FRONT PLATE. AS THE VEHICLE LEFT THE LOT AND CONTINUED DOWN
GRAFTON ST. WHEN I ACTIVATED MY EMERGENCY LIGHTS AND ATTEMPTED TO STOP THE
VEHICLE. THE VEHICLE REFUSED TO STOP AND CONTINUED DOWN GRAFTON ST. AND DROVE
INTO A BACK PARKING LOT AT 165 GRAFTON ST. I ADVISED DISPATCH AND ASKED FOR
ADDITIONAL CARS. P.O.'S STEVE GUNNERSON , KEVIN JOHANSON ARRIVED TO ASSIST.I
APPROACHED THE DRIVERS SIDE AND ASKED THE DIVER TO LOWER HIS WINDOW IT WAS AT
THIS POINT THAT THE DRIVER, LATER IDENTIFIED AS DANIEL HOUDE (03/14/64),
REACHED OVER AND LOCKED HIS DOOR. FEARING FOR THE MY SAFETY AND THE SAFETY OF
THE OFFICERS PRESENT I ORDERED HOUDE TO UNLOCK THE DOOR AND EXIT THE VEHICLE,
HE REFUSED, HOUDE KEPT HIS HANDS IN HIS WAIST AREA ATTEMPTING TO HIDE
SOMETHING. I REPEATED THIS ORDER SEVERAL MORE TIMES WITHOUT COMPLIANCE, P.O.
JOHANSON STATED THAT HE WAS GOING TO ENTER THE VEHICLE THROUGH AN UNLOCKED SIDE
DOOR.
    AS JOHANSON ENTERED THE M.V. HE UNLOCKED THE DOOR AND WE ATTEMPTED TO GET
HOUDE OUT OF THE VEHICLE. AT FIRST HE REFUSED TO LET GO OF THE STEERING WHEEL
WITH HIS RIGHT HAND WHILE KEEPING HIS LEFT HAND CLOSED. HE THEN BEGAN TO
VIOLENTLY STRUGGLE, FLAILING AND SWINGING HIS ARMS. AT SOME POINT IN THE
BEGINNING OF THE STRUGGLE P.O. GUNNERSON WAS AT THE PASSENGER DOOR. IN THE SEAT
WAS A FEMALE, LATER IDENTIFIED AS RENEE RUDY (10/28/68), WHILE JOHANSON AND I
WERE STRUGGLING WITH HOUDE RUDY ATTEMPTED TO EXIT THE VEHICLE WITH GUNNERSON
STANDING THERE. GUNNERSON ADVISED HER TO STAY IN THE VEHICLE AT WHICH POINT

Single Narrative

| INCIDENT LOCAL # PRIORITY ACC REP | ACTIVITY ADDRESS (JURISDICTION) DISPOSITION | OFFICER(S) | RECEIVED DISPATCHED ARRIVED CLEARED | DISPATCHER SUPERVISOR NATURE INCIDENT TYPE |
|---|---|---|---|---|

Narrative  1 (continued)  By: PO ROBERT TURGEON          Incident I0254157

RUDY FLUNG OPEN THE DOOR VIOLENTLY AND STRUCK P.O. GUNNERSON RIGHT ARM AND SHOULDER. GUNNERSON, SEEING US STRUGGLING WITH HOUDE, ENTERED THE M.V. TO ASSIST US. RUDY FLED THE SCENE ON FOOT AND WAS FOUND AT UNCLE CHARLIE'S TAVERN ON GRAFTON ST. WERE SHE BECAME LOUD AND BOISTEROUS CAUSING A DISTURBANCE INSIDE THE BUSINESS.

    P.O.'S JOHANSON, GUNNERSON AND I CONTINUED TO ATTEMPT TO PLACE HOUDE INTO CUSTODY. HE WAS TOLD SEVERAL TIMES BY THE THREE OF US TO STOP RESISTING AND PUT HIS HANDS BEHIND HIS BACK. DURING THIS TIME HOUDE PUNCHED ME IN THE RIBS AND PUNCHED P.O. JOHANSON IN THE NECK AREA. HE ALSO KICKED P.O. GUNNERSON IN THE CHEST. OTHER OFFICERS HEARD THE STRUGGLE OVER OUR PORTABLE RADIOS AND ARRIVED AT THE SCENE TO ASSIST. P.O.'S BRIAN HALLORAN, MATTHEW D'ANDREA, THOMAS DUFFY AND SEAN MCCANN ARRIVED AND BEGAN TO ASSIST IN PUTTING HOUDE INTO CUSTODY. WHEN THESE OFFICERS ARRIVED WE WERE STILL IN THE CAMPER AT THE SIDE DOOR, I OBSERVED HOUDE DROP SOMETHING OUT OF HIS STILL CLOSED LEFT HAND. I WAS ABLE TO RECOVER THIS ITEM AND UPON FURTHER INSPECTION IT WAS DISCOVERED TO BE A SMALL PLASTIC BAGGIE "CORNER" WHICH CONTAINED A HARDENED WHITE SUBSTANCE, WHICH THROUGH MY TRAINING AND EXPERIENCE I BELIEVED TO BE CRACK COCAINE. WE CONTINUED TO FIGHT WITH HOUDE AND AT THE POINT WHEN HOUDE WAS BEING TAKEN FROM THE CAMPER HE LOST HIS FOOTING AND LANDED ON THE PAVEMENT. HOUDE CONTINUED TO STRUGGLE FOR SEVERAL MORE MINUTES AT WHICH POINT P.O. DUFFY ADVISED HOUDE THAT IF HE DID NOT COMPLY THAT HE WOULD BE SPRAYED WITH O.C. AFTER ANOTHER WARNING P.O. DUFFY SPRAYED HOUDE WITH HIS DEPARTMENT ISSUE O.C. SPRAY FOR A ONE SECOND BURST INTO TO THE FACE AREA. HOUDE BEGAN TO COMPLY AND WAS PLACED IN HANDCUFFS. HE WAS REMOVED FROM THE AREA OF O.C. SPRAY ADVISED OF ITS EFFECTS. SOMETIME DURING THE ALTERCATION HOUDE SUFFERED A LACERATION ABOVE HIS EYE.

    THE PATROL WAGON ARRIVED AND IMMEDIATELY TRANSPORTED HOUDE TO UMASS MEMORIAL FOR TREATMENT FOR HIS LACERATION AND THE EFFECTS OF THE O.C. SPRAY. THE FEMALE, RENEE RUDY WAS ALSO PLACED UNDER ARREST AND TRANSPORTED TO THE CELLROOM FOR BOOKING.

    SEVERAL OFFICERS WERE EXPOSED TO HOUDE BLOOD AND WE WERE MET BY MEDIC 1 AND THEY ASSISTED US IN CLEANING OFF THE BLOOD. THEY ALSO EXAMINED P.O. HALLORAN AND MYSELF FOR INJURIES WE SUFFERED IN THE ALTERCATION. HALLORAN SUFFERED A CONTUSION TO HIS FOREARM AND ALSO AN ABRASION TO HIS ELBOW. HE DID NOT SEEK FURTHER TREATMENT. I SUFFERED AN INJURY TO MY RIGHT HAND WHICH THE PARAMEDIC STATED COULD BE A "BOXER'S FRACTURE" AND HE ADVISED ME OF MY OPTIONS. AT THIS TIME I DID NOT SEEK FURTHER TREATMENT.

    THE LICENSE PLATES WERE RUN THROUGH CJIS AND THE REAR PLATE, 89092, CAME BACK AS NO MATCHING RECORD FOUND. THE FRONT PLATE, 82903, CAME BACK EXPIRED TO A MARY STELLATO OF MATTAPOISET MA. AT THIS TIME SHE COULD NOT BE CONTACTED. BOTH PLATES WERE CONFISCATED AND WILL BE TURNED INTO THE REGISTRY OF MOTOR VEHICLES. THE COCAINE WAS TURNED IN AT THE SERVICE DIVISION TO BE PICKED UP BY THE VICE SQUAD AND SENT OUT FOR ANALYSIS.

    RENEE RUDY'S CHARGES ARE:
        1. DISORDERLY BEHAVIOR
        2. DISTURBING THE PEACE
        3. A&B BY DANGEROUS WEAPON (TO WIT: CAR DOOR)

Single Narrative

| INCIDENT LOCAL # PRIORITY ACC REP | ACTIVITY ADDRESS (JURISDICTION) DISPOSITION | OFFICER(S) | RECEIVED DISPATCHED ARRIVED CLEARED | DISPATCHER SUPERVISOR NATURE INCIDENT TYPE |
|---|---|---|---|---|

Narrative   1 (continued)  By: PO ROBERT TURGEON          Incident I0254157

          4. RESISTING ARREST
          5. WARRANT- UNLICENSED OPERATION/SPEEDING (DEF. DOCKET 0062CR006216)

      DANIEL HOUDE'S CHARGES ARE:
          1. ILLEGAL POSS. OF A CLASS B SUB.
          2. A&B BY DANGEROUS WEAPON (TO WIT: SHOD FOOT)
          3. A&B ON A POLICE OFFICER
          4. A&B ON A POLICE OFFICER
          5. A&B ON A POLICE OFFICER
          6. RESISTING ARREST
          7. FAILURE TO STOP FOR A POLICE OFFICER
          8. ILLEGALLY ATTACHING PLATES
          9. OPER. AN UNREG. M.V.
         10. OPER. AN UNINSURED M.V.  (CITATIONS K0773490 AND K0773491 WERE
ISSUED)
      THE CAMPER WAS LEFT AT THE SCENE BECAUSE IT WAS ON PRIVATE PROPERTY.
DISPATCH WAS NOTIFIED IN THE EVENT THE OWNER OF THE PROPERTY CALLED.




REPORTING OFFICER                          DATE



REVIEWING OFFICIAL                         DATE

# EXHIBIT B

| CRIMINAL DOCKET | DOCKET NO. 0262CR005098 | ATTORNEY NAME | |
|---|---|---|---|

| COURT DIVISION Worcester | ☐ INTERPRETER REQUIRED | DATE and JUDGE 5-20-02 Brooks / | DOCKET ENTRY |
|---|---|---|---|

NAME, ADDRESS AND ZIP CODE OF DEFENDANT

HOUDE, DANIEL J
18 ORIENT ST #1
WORCESTER, MA 01604

☐ Attorney appointed (SJC R. 3.10)
☐ Atty denied and Deft Advised per 211D §2A
☐ Waiver of counsel found after colloquy

Terms of release set:
☒ PR  ☐ Bail:
☐ Held (276 §58A)
☐ See back for special conditions

Arraigned and advised:
☒ Potential of bail revocation (276 §58)
☒ Right to bail review (276 §58)
☒ Right to drug exam (111E §10)

| DEFT. DOB AND SEX 03/14/1964  M | |
|---|---|

| DATE OF OFFENSE(S) 05/20/2002 | PLACE OF OFFENSE(S) WORCESTER |
|---|---|

Advised of right to jury trial:
☐ Does not waive
☒ Waiver of jury trial found after colloquy

| COMPLAINANT SWIFT, LT BARBARA | POLICE DEPARTMENT (if applicable) WORCESTER PD |
|---|---|

DATE OF COMPLAINT 05/20/2002 | RETURN DATE AND TIME

Advised of trial rights as pro se (Supp. R. 4)
Advised of right of appeal to Appeals Ct (R. 28)

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|---|
| 1. 94C/34/C DRUG, POSSESS CLASS B c94C §34 | | | | | |

DISPOSITION DATE AND JUDGE

SENTENCE OR OTHER DISPOSITION
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation ☐ Pretrial Probation (276 §87) until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim
☐ Request of Deft ☐ Failure to prosecute ☐ Other:
☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C)

DISPOSITION METHOD
☒ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

FINDING
☐ Not Guilty
☒ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

FINAL DISPOSITION
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

JUDGE

DATE

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|---|
| 2. 265/15A/A A&B WITH DANGEROUS WEAPON c265 §15A(b) | | | | | |

DISPOSITION DATE AND JUDGE

SENTENCE OR OTHER DISPOSITION
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim
☐ Request of Deft ☐ Failure to prosecute ☐ Other:
☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C)

DISPOSITION METHOD
☒ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

FINDING
☐ Not Guilty
☒ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

FINAL DISPOSITION
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

JUDGE

DATE

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|---|
| 3. 265/13D/A A&B ON POLICE OFFICER c265 §13D | | | | | |

DISPOSITION DATE AND JUDGE

SENTENCE OR OTHER DISPOSITION
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim
☐ Request of Deft ☐ Failure to prosecute ☐ Other:
☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C)

DISPOSITION METHOD
☒ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

FINDING
☐ Not Guilty
☒ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

FINAL DISPOSITION
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

JUDGE

DATE

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|---|
| 4. 265/13D/A A&B ON POLICE OFFICER c265 §13D | | | | | |

DISPOSITION DATE AND JUDGE

SENTENCE OR OTHER DISPOSITION
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim
☐ Request of Deft ☐ Failure to prosecute ☐ Other:
☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C)

DISPOSITION METHOD
☒ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

FINDING
☐ Not Guilty
☒ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

FINAL DISPOSITION
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

JUDGE

DATE

☒ ADDITIONAL COUNTS ATTACHED

| A TRUE COPY ATTEST: X | CLERK-MAGISTRATE/ASST. CLERK | ON (DATE) | COURT ADDRESS Worcester District Court 50 Harvard Street Worcester, MA 01608 |
|---|---|---|---|

# ADDITIONAL COUNTS

Page 2 Of 2

**0262CR005098**

| COUNT-OFFENSE | V/W FEE | FINE | SURFINE | COSTS | TOTAL DUE |
|---|---|---|---|---|---|
| 5. 265/13D/A A&B ON POLICE OFFICER c265 §13D | | | | | |

| DATE 11-22-02 | PLEA ☐ Not Guilty ☐ Guilty ☐ Nolo ☐ New Plea: ☐ Admits suff. facts | IMPRISONMENT AND OTHER DISPOSITION |
| | | 90 days ITC commit 9060 |
| | | 75 days credit |
| | FINDING G | JUDGE Teshant |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION                                    DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| COUNT-OFFENSE | V/W FEE | FINE | SURFINE | COSTS | TOTAL DUE |
|---|---|---|---|---|---|
| 6. 268/32B RESIST ARREST c268 §32B | | | | | |

| DATE 11-22-02 | PLEA ☐ Not Guilty ☐ Guilty ☐ Nolo ☐ New Plea: ☐ Admits suff. facts | IMPRISONMENT AND OTHER DISPOSITION |
| | | 90 days ITC conc w/ 24000 |
| | | 75 days credit |
| | FINDING G | JUDGE Teshan |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION                                    DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| COUNT-OFFENSE | V/W FEE | FINE | SURFINE | COSTS | TOTAL DUE |
|---|---|---|---|---|---|
| 7. 90/25/D STOP FOR POLICE, FAIL c90 §25 | | | | | |

| DATE 11-22-02 | PLEA ☐ Not Guilty ☐ Guilty ☐ Nolo ☐ New Plea: ☐ Admits suff. facts | IMPRISONMENT AND OTHER DISPOSITION |
| | | filed |
| | FINDING G | JUDGE teshant |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION                                    DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| COUNT-OFFENSE | V/W FEE | FINE | SURFINE | COSTS | TOTAL DUE |
|---|---|---|---|---|---|
| 8. 90/23/G NUMBER PLATE VIOLATION TO CONCEAL ID c90 §23 | | | | | |

| DATE 11-22-02 | PLEA ☐ Not Guilty ☐ Guilty ☐ Nolo ☐ New Plea: ☐ Admits suff. facts | IMPRISONMENT AND OTHER DISPOSITION |
| | | filed |
| | FINDING G | JUDGE Teshaant |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION                                    DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| COUNT-OFFENSE | V/W FEE | FINE | SURFINE | COSTS | TOTAL DUE |
|---|---|---|---|---|---|
| 9. 90/34J UNINSURED MOTOR VEHICLE c90 §34J | | | | | |

| DATE 11-22-02 | PLEA ☐ Not Guilty ☐ Guilty ☐ Nolo ☐ New Plea: ☐ Admits suff. facts | IMPRISONMENT AND OTHER DISPOSITION |
| | | filed |
| | FINDING G | JUDGE Teshraant |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION                                    DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

| COUNT-OFFENSE | V/W FEE | FINE | SURFINE | COSTS | TOTAL DUE |
|---|---|---|---|---|---|
| 10. 90/9/B UNREGISTERED MOTOR VEHICLE * c90 §9 | | | | | |

| DATE 11-22-02 | PLEA ☐ Not Guilty ☐ Guilty ☐ Nolo ☐ New Plea: ☐ Admits suff. facts | IMPRISONMENT AND OTHER DISPOSITION |
| | | filed |
| | FINDING G | JUDGE Teshan |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION                                    DATE |
| | ☐ Appeal of find. & disp.  ☐ Appeal of disp. | ☐ Discharged from probation |
| | | ☐ Dismissed at request of probation |

## SCHEDULING HISTORY

| NO. | SCHEDULED DATE | SCHEDULED EVENT | RESULT | | JUDGE | TAPE NO. | START | STOP |
|---|---|---|---|---|---|---|---|---|
| 1 | 5-20-03 | Arr | ☐ Held  ☐ Cont'd | | Burns | 62 27 5-84 | 789 | |
| 2 | 5-29-02 | PT 408 | ☐ Held  ☐ Cont'd | | | | | |
| 3 | 7-31-02 | Status | ☐ Held  ☐ Cont'd | | | | | |
| 4 | 10-29-02 | Status | ☐ Held  ☐ Cont'd  9-9-02 bat fwd Recover | | | | | |
| 5 | 9-17-02 | Status | ☐ Held  ☐ Cont'd | | | | | |
| 6 | 10-29-02 | PC | ☐ Held  ☐ Cont'd | | Howarth | 1235 | 0.28 | |
| 7 | 11-15-02 | TAD | ☐ Held  ☐ Cont'd | | | | | |
| 8 | 11-22-02 | Stipn 411 81 | ☑ Held  ☐ Cont'd | | Teshu | 1348 | 596 | |
| 9 | | | ☐ Held  ☐ Cont'd | | | | | |
| 10 | | | ☐ Held  ☐ Cont'd | | | | | |

ARR=Arraignment  PT=Pretrial hearing  CE=Discovery compliance and jury election  T=Bench trial  J=Jury Trial  PC=Probable cause hearing  M=Motion hearing  SR=Status review  SRP=Status review of payments  FA=First appearance in jury session  S=Sentencing  CW=Continuance-without-finding scheduled to terminate  P=Probation scheduled to terminate  DFTA=Defendant failed to appear and was defaulted  WAR=Warrant issued  WARD=Default warrant issued  WR=Warrant or default warrant recalled  PR=Probation revocation hearing

| ENTRY DATE | OTHER DOCKET ENTRIES |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## ADDITIONAL ASSESSMENTS IMPOSED OR WAIVED

| DATE IMPOSED and JUDGE | TYPE OF ASSESSMENT | AMOUNT | DUE DATES and COMMENTS | ✓WAIVED |
|---|---|---|---|---|
| | Legal Counsel Fee (211D §2A ¶2) | | | |
| | Legal Counsel Contribution (211D §2) | | | |
| | Court Costs (280 §6) | | . | |
| | Drug Analysis Fee (280 §6B) | | | |
| | OUI §24D Fee (90 §24D ¶9) | | | |
| | OUI Head Injury Surfine (90 §24[1][a][1] ¶2) | | | |
| | Probation Supervision Fee (276 §87A) | | | |
| | Default Warrant Assessment Fee (276 §30 ¶2) | | | |
| | Default Warrant Removal Fee (276 §30 ¶1) | | | |

| TENDER OF PLEA OR ADMISSION WAIVER OF RIGHTS | DOCKET NO. 02-5098 | NO. OF COUNTS 10 | Trial Court of Massachusetts District Court Department |
|---|---|---|---|

| INSTRUCTIONS: This form must be typed or printed clearly, completed prior to the Pretrial Hearing, signed by both counsel and submitted to the court by the defendant at or before the Pretrial Hearing. | NAME OF DEFENDANT Daniel Houde | COURT DIVISION Worcester District Court 50 Harvard Street Worcester, MA. 01608 |
|---|---|---|

## SECTION I — TENDER OF PLEA

Defendant in this case hereby tenders the following: **PLEA OF GUILTY** / **ADMISSION TO FACTS SUFFICIENT FOR A FINDING OF GUILTY** conditioned on the dispositional terms indicated below. *Include all proposed terms (guilty finding, finding of sufficient facts, continued without finding, dismissal, fine, costs, probation period and supervision terms, restitution amount including the identification of the recipient of restitution, and any sentence of incarceration, split sentence or suspended sentence, etc.). Number each count and specify terms for each count separately.*

| COUNT NO. | DEFENDANT'S DISPOSITIONAL TERMS (Check "Yes" if Prosecution agrees – Check "No" if Prosecution disagrees) | | PROSECUTOR'S RECOMMENDATION (Required if Prosecutor disagrees with terms) |
|---|---|---|---|
| 1 | Poss class B — Guilty ⟶ 10 Days H.C. com/concurrent w 02/9060 | YES | |
| 2 | A+B D/W -90 Days ⟶ Guilty H.C. committed/concurrent w/02-9060 | YES | |
| 3/6 | A+B P/O ⟶ Guilty " " | YES NO | |
| 7 | Fail stop police ⟶ G-Filed | YES | |
| 8/9 | attach plates — G Filed Guilty | YES NO | |
| 10 | Uninsure m/v — R-Filed | | |

WE HAVE CONSULTED WITH THE PROBATION DEPARTMENT REGARDING ANY PROBATION TERMS SET FORTH ABOVE.

| SIGNATURE OF DEFENSE COUNSEL X _David Girl_ | DATE | SIGNATURE OF PROSECUTING OFFICER X _Rob Iniello_ | DATE 11·21·02 |
|---|---|---|---|

## SECTION II — PLEA OR ADMISSION ACCEPTED BY THE COURT

The Court **☒ ACCEPTS** the tendered Plea or Admission on defendant's terms set forth in Section I, and will impose sentence in accordance with said terms, subject to submission of defendant's written WAIVER (see Section IV on reverse of this form), completion of the required oral COLLOQUY, a determination that there is a FACTUAL BASIS for the Plea or Admission, and notice of ALIEN RIGHTS.

## SECTION III — PLEA OR ADMISSION REJECTED BY THE COURT

| The Court ☐ **REJECTS** the defendant's dispositional terms set forth above and, in accordance with Mass. R. Crim. P. 12(c)(6), has set forth to the defendant the dispositional terms it would find acceptable, to wit: | **DEFENDANT'S DECISION IF COURT REJECTS TENDERED PLEA OR ADMISSION:** Defendant **WITHDRAWS** the tendered Plea or Admission; the parties must complete and file a Pretrial Conference Report, a Pretrial Hearing must be conducted and a trial date scheduled, if necessary. Defendant **ACCEPTS** terms set forth by the Court, a Plea or Admission will be accepted by the court and said dispositional terms imposed, subject to submission of defendant's written WAIVER (see Section IV on reverse of this form), completion of the required oral COLLOQUY, a determination that there is a FACTUAL BASIS for the Plea or Admission, and notice of ALIEN RIGHTS. |
|---|---|

| SIGNATURE OF JUDGE ACCEPTING OR REJECTING PLEA OR ADMISSION _Perlesian_ | DATE 11/22/02 | SIGNATURE OF DEFENSE COUNSEL (If rejection decision made) X | DATE |
|---|---|---|---|

DC-CR 22 (8/96)

**SECTION IV**     DEFENDANT'S WAIVER OF RIGHTS (G.L.c. 263, § 6) & ALIEN RIGHTS NOTICE (G.L.c. 278, § 29D)

I, the undersigned defendant, understand and acknowledge that I am voluntarily giving up the right to be tried by a jury or a judge without a jury on these charges.

I have discussed my constitutional and other rights with my attorney. I understand that the jury would consist of six jurors chosen at random from the community, and that I could participate in selecting those jurors, who would determine unanimously whether I was guilty or not guilty. I understand that by entering my plea of guilty or admission, I will also be giving up my right to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to testify or provide evidence against myself by asserting my privilege against self-incrimination, all with the assistance of my defense attorney; and to be presumed innocent until proven guilty by the prosecution beyond a reasonable doubt.

I am aware of the nature and elements of the charge or charges to which I am entering my guilty plea or admission. I am also aware of the nature and range of the possible sentence or sentences.

My guilty plea or admission is not the result of force or threats. It is not the result of assurances or promises, other than any agreed-upon recommendation by the prosecution, as set forth in Section I of this form. I have decided to plead guilty, or admit to sufficient facts, voluntarily and freely.

I am not now under the influence of any drug, medication, liquor or other substance that would impair my ability to fully understand the constitutional and statutory rights that I am waiving when I plead guilty, or admit to sufficient facts to support a finding of guilty.

I understand that if I am not a citizen of the United States, conviction of this offense may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.

| SIGNATURE OF DEFENDANT | DATE | |
|---|---|---|
| X | | |

**SECTION V**     DEFENSE COUNSEL'S CERTIFICATE (G.L. c. 218, § 26A)

As required by G.L. c. 218, § 26A, I certify that as legal counsel to the defendant in this case, I have explained to the defendant the above-stated provisions of law regarding the defendant's waiver of jury trial and other rights so as to enable the defendant to tender his or her plea of guilty or admission knowingly, intelligently and voluntarily.

| SIGNATURE OF DEFENSE COUNSEL | B.B.O. NO. | DATE | |
|---|---|---|---|
| X | | | |

**SECTION VI**     JUDGE'S CERTIFICATION

I, the undersigned Justice of the District Court, addressed the defendant directly in open court. I made appropriate inquiry into the education and background of the defendant and am satisfied that he or she fully understands all of his or her rights as set forth in Section IV of this form, and that he or she is not under the influence of any drug, medication, liquor or other substance that would impair his or her ability to fully understand those rights. I find, after an oral colloquy with the defendant, that the defendant has knowingly, intelligently and voluntarily waived all of his or her rights as explained during these proceedings as set forth in this form.

After a hearing, I have found a factual basis for the charge(s) to which the defendant is pleading guilty or admitting and I have found that the facts as related by the prosecution and admitted by the defendant would support a conviction on the charges to which the plea or admission is made.

I further certify that the defendant was informed and advised that if he or she is not a citizen of the United States, a conviction of the offense with which he or she was charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.

| SIGNATURE OF JUDGE | DATE | |
|---|---|---|
| X | | |

# EXHIBIT C

| APPLICATION FOR COMPLAINT | | NUMBER 3571 | | Trial Court of Massachusetts District Court Department |
|---|---|---|---|---|

☐ JUVENILE

☒ ARREST  ☐ HEARING  ☐ SUMMONS  ☐ WARRANT

The within named complainant requests that a complaint issue against the within named defendant, charging said defendant with the offense(s) listed below.

**COURT DIVISION**
WORCESTER DISTRICT COURT
WORCESTER COUNTY
50 HARVARD STREET
WORCESTER, MA 01608

| DATE OF APPLICATION | DATE OF OFFENSE | PLACE OF OFFENSE |
|---|---|---|
| 05/20/2002 | 05/20/2002 | 165 GRAFTON ST |

**NAME OF COMPLAINANT**
PO ROBERT TURGEON          799-8600

**ADDRESS AND ZIP CODE OF COMPLAINANT**
Worcester Police Department
9-11 Lincoln Square
Worcester, MA 01608

**NAME, ADDRESS AND ZIP CODE OF DEFENDANT**
HOUDE, DANIEL J *          M#M9541178

18 ORIENT ST, #1          A#A0203391

WORCESTER, MA  01604          I#I0254157

| NO. | OFFENSE | G.L. Ch. and Sec. |
|---|---|---|
| 1. | ILLEGAL POSS. OF CLASS B SUBSTANCE (822) | 94C-34 |
| 2. | A&B BY DANGEROUS WEAPON (617) | 265-15A |
| 3. | A&B ON A POLICE OFFICER (609) | 265-13D |
| 4. | A&B ON A POLICE OFFICER (609) | 265-13D |

| COURT USE ONLY → | A hearing upon this complaint application will be held at the above court address on | DATE OF HEARING | TIME OF HEARING AT | COURT USE ← ONLY |
|---|---|---|---|---|

## CASE PARTICULARS — BE SPECIFIC

| NO. | NAME OF VICTIM Owner of property, person assaulted, etc. | DESCRIPTION OF PROPERTY Goods stolen, what destroyed, etc. | VALUE OR PROPERTY Over or under $250. | TYPE OF CONTROLLED SUBSTANCE OR WEAPON Marijuana, gun, etc. |
|---|---|---|---|---|
| 1 | | | | CRACK COCAINE (1 BAGGIE) |
| 2 | P.O. STEVE GUNNERSON | | | SHOD FOOT |
| 3 | P.O. ROBERT TURGEON | | | FIST |
| 4 | P.O. KEVIN JOHANSON | | | FIST |

OTHER REMARKS: [This is page 1 of 3]
None.

X _____
SIGNATURE OF COMPLAINANT

## DEFENDANT IDENTIFICATION INFORMATION — Complete data below if known.

| DATE OF BIRTH | PLACE OF BIRTH | SOCIAL SECURITY NUMBER | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|
| 03/14/1964 | SPFLD,MA | 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 | M | WHI | 5 8 | 150 | BRO | BRO |

| OCCUPATION | EMPLOYER/SCHOOL | MOTHER'S NAME (MAIDEN) | FATHER'S NAME |
|---|---|---|---|
| SELD-EMPLOYED | VENDOR | LEPRIE, MARGARET | HOUDE, DONALD |

## ▼ COURT USE ONLY ▼

| DATE | DISPOSITION | AUTHORIZED BY |
|---|---|---|
| | NO PROCESS TO ISSUE ☐ At request of complainant ☐ Complainant failed to prosecute ☐ Insufficient evidence having been presented | |
| | PROCESS TO ISSUE          TYPE OF PROCESS ☐ Sufficient evidence presented  ☐ Warrant ☐ Defendant failed to appear    ☐ Summons returnable _____ | |
| | ☐ Continued to _____ | |

COMMENTS

DC-CR2 (3/88)                                                    COURT COPY

**APPLICATION FOR COMPLAINT**

☐ JUVENILE    3391

Trial Court of Massachusetts
District Court Department

☐ ARREST    ☐ HEARING    ☐ SUMMONS    ☐ WARRANT

The within named complainant requests that a complaint issue against the within named defendant, charging said defendant with the offense(s) listed below.

| COURT DIVISION |
|---|
| WORCESTER DISTRICT COURT |
| WORCESTER COUNTY |
| 50 HARVARD STREET |
| WORCESTER, MA  01608 |

| DATE OF APPLICATION | DATE OF OFFENSE | PLACE OF OFFENSE |
|---|---|---|
| 05/20/2002 | 05/20/2002 | 165 GRAFTON ST |

| NAME OF COMPLAINANT | | |
|---|---|---|
| PO ROBERT TURGEON | 799-8600 | |

| ADDRESS AND ZIP CODE OF COMPLAINANT |
|---|
| Worcester Police Department |
| 9-11 Lincoln Square |
| Worcester, MA  01608 |

| NAME, ADDRESS AND ZIP CODE OF DEFENDANT | |
|---|---|
| HOUDE, DANIEL J * | M#M9541178 |
| 18 ORIENT ST, #1 | A#A0203391 |
| WORCESTER, MA  01604 | I#I0254157 |

| NO. | OFFENSE | G.L. Ch. and Sec. |
|---|---|---|
| 1. | A&B ON A POLICE OFFICER (609) | 265-13D |
| 2. | RESISTING ARREST | 268-32B |
| 3. | ~~FAIL. TO STOP FOR POLICE, OPER MV (12Z)~~ | ~~90-25~~ |
| 4. | ~~ATTACHING PLATES TO A MV (119)~~ | ~~90-23~~ |

| COURT USE ONLY → | A hearing upon this complaint application will be held at the above court address on | DATE OF HEARING ⎰ AT | TIME OF HEARING | COURT USE ← ONLY |
|---|---|---|---|---|

## CASE PARTICULARS — BE SPECIFIC

| NAME OF VICTIM Owner of property, person assaulted, etc. | DESCRIPTION OF PROPERTY Goods stolen, what destroyed, etc. | VALUE OR PROPERTY Over or under $250. | TYPE OF CONTROLLED SUBSTANCE OR WEAPON Marijuana, gun, etc. |
|---|---|---|---|
| P.O. BRIAN HALLORAN | | | FIST |
| | | | |
| | | | |

OTHER REMARKS:  [This is page 2 of 3]

X _____
SIGNATURE OF COMPLAINANT

## DEFENDANT IDENTIFICATION INFORMATION — Complete data below if known.

| DATE OF BIRTH | PLACE OF BIRTH | SOCIAL SECURITY NUMBER | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|
| 03/14/1964 | SPFLD,MA | 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 | M | WHI | 5  8 | 150 | BRO | BRO |

| OCCUPATION | EMPLOYER/SCHOOL | MOTHER'S NAME (MAIDEN) | FATHER'S NAME |
|---|---|---|---|
| SELF-EMPLOYED | VENDOR | LEPRIE, MARGARET | HOUDE, DONALD |

## ↓ COURT USE ONLY ↓

| DATE | DISPOSITION | AUTHORIZED BY |
|---|---|---|
| | NO PROCESS TO ISSUE<br>☐ At request of complainant<br>☐ Complainant failed to prosecute<br>☐ Insufficient evidence having been presented | |
| | PROCESS TO ISSUE        TYPE OF PROCESS<br>☐ Sufficient evidence presented    ☐ Warrant<br>☐ Defendant failed to appear    ☐ Summons returnable _____ | |
| | ☐ Continued to _____ | |

COMMENTS

CR2 (3/88)

COURT COPY

1 OF 2

## MASSACHUSETTS UNIFORM CITATION

| | | TYPE OF CITATION | K 0773490 |
|---|---|---|---|

| DATE CITATION WRITTEN | AGENCY CODE | OFFICER I.D. NUMBER | COURT CODE | MOTOR VEH |
|---|---|---|---|---|
| 05 20 02 | WOR | T749 | 62 | ☒ OPER ☐ OWNER |

**VIOLATOR**

| MOTOR VEHICLE LICENSE NO. OF VIOLATOR | STATE | CLASS | CDL LICENSE | RACE | SEX | NON-INVENTORY MV SEARCH |
|---|---|---|---|---|---|---|
| S94563027 | MA | D | ☐ YES ☒ NO | W | M | ☒ NO ☐ YES |

| VIOLATOR NAME (Last) | (First) | (Initial) | DATE OF BIRTH |
|---|---|---|---|
| HOUDE | DANIEL | J | 03 14 64 |

| ADDRESS | CITY/TOWN | STATE | ZIP |
|---|---|---|---|
| 18 ORIENT ST | WORCESTER | MA | 01604 |

**MV**

| PLATE TYPE | MOTOR VEHICLE REGISTRATION NO. | STATE | CDL VEHICLE | HAZARDOUS MATERIAL | MAKE AND TYPE | YEAR | COLOR |
|---|---|---|---|---|---|---|---|
| AAN | CA89092 | MA | ☐ YES ☒ NO | ☐ YES ☒ NO | FORD AUTHM | 77 | WHI |

**OFFENSE(S)**

| DATE OF OFFENSE | LOCATION OF OFFENSE (include #, st, hwy, city or town) | TIME OF OFFENSE | ACCIDENT |
|---|---|---|---|
| 05 20 02 | 165 GRAFTON ST     WORCESTER | 00:44 ☒ AM ☐ PM | ☐ YES ☒ NO |

| | CHAP/SEC/SUB | | DESCRIPTION OF OFFENSE | ASSESSMENT | JUDGMENT | JUDGMENT DATE | COMMENT |
|---|---|---|---|---|---|---|---|
| A | 90/25 | ☒ CRIM ☐ CIVIL | FAIL TO STOP FOR POLICE | $ | | | |
| B | 90/23 | ☒ CRIM ☐ CIVIL | illegally attaching plates | $ | | | |
| C | 90/34J | ☒ CRIM ☐ CIVIL | Operating Uninsured M/V | $ | | | |

| D SPEEDING | | | MPH IN | MPH ZONE | ☐ POSTED | ☐ CLOCKED | |
|---|---|---|---|---|---|---|---|
| ☐ 90/17 | ☐ 90/18 | CIVIL | A | | ☐ NOT POSTED | ☐ RADAR ☐ ESTIMATED | $ |

| | TOTAL DUE | DOCKET NUMBER |
|---|---|---|
| | $ | |

**SPEEDING ASSESSMENTS INCLUDE A $25 SURCHARGE FOR THE HEAD INJURY TRUST FUND**

| OFFICER CHECK ONE ONLY | ☐ ALL CIVIL INFRACTIONS (See instruction A on back) | ☐ CRIMINAL APPLICATION (See instruction B on back) | ☒ ARREST | ☐ WARNING (No action required by violator) |
|---|---|---|---|---|

COURT ADDRESS
50 HARVARD ST
Worcester, MA

| OFFICER CERTIFIES: | ☒ IN HAND TO VIOL | ☐ MAILED TO VIOL. | ☐ IN HAND TO VIOLATOR'S AGENT |
|---|---|---|---|
| X PO first sergeant #292 | | | |

VIOLATOR/AGENT ACKNOWLEDGES RECEIPT OF CITATION
X

---

2 OF 2

## MASSACHUSETTS UNIFORM CITATION

| | | TYPE OF CITATION | K 0773491 |
|---|---|---|---|

| DATE CITATION WRITTEN | AGENCY CODE | OFFICER I.D. NUMBER | COURT CODE | MOTOR VEH |
|---|---|---|---|---|
| 05 20 02 | WOR | T749 | 62 | ☒ OPER ☐ OWNER |

**VIOLATOR**

| MOTOR VEHICLE LICENSE NO. OF VIOLATOR | STATE | CLASS | CDL LICENSE | RACE | SEX | NON-INVENTORY MV SEARCH |
|---|---|---|---|---|---|---|
| S94563027 | MA | D | ☐ YES ☒ NO | W | M | ☒ NO ☐ YES |

| VIOLATOR NAME (Last) | (First) | (Initial) | DATE OF BIRTH |
|---|---|---|---|
| HOUDE | DANIEL | J | 03 14 64 |

| ADDRESS | CITY/TOWN | STATE | ZIP |
|---|---|---|---|
| 18 ORIENT ST | WORCESTER | MA | 01604 |

**MV**

| PLATE TYPE | MOTOR VEHICLE REGISTRATION NO. | STATE | CDL VEHICLE | HAZARDOUS MATERIAL | MAKE AND TYPE | YEAR | COLOR |
|---|---|---|---|---|---|---|---|
| AAN | CA89092 | MA | ☐ YES ☒ NO | ☐ YES ☒ NO | FORD AUTHM | 77 | WHI |

**OFFENSE(S)**

| DATE OF OFFENSE | LOCATION OF OFFENSE (include #, st, hwy, city or town) | TIME OF OFFENSE | ACCIDENT |
|---|---|---|---|
| 05 20 02 | 165 GRAFTON ST     WORCESTER | 00:44 ☒ AM ☐ PM | ☐ YES ☒ NO |

| | CHAP/SEC/SUB | | DESCRIPTION OF OFFENSE | ASSESSMENT | JUDGMENT | JUDGMENT DATE | COMMENT |
|---|---|---|---|---|---|---|---|
| A | 90/9 | ☒ CRIM ☐ CIVIL | Op Unreg, stored, M/V | $ | | | |
| B | | ☐ CRIM ☐ CIVIL | | $ | | | |
| C | | ☐ CRIM ☐ CIVIL | | | | | |

| D SPEEDING | | | MPH IN | MPH ZONE | ☐ POSTED | ☐ CLOCKED | |
|---|---|---|---|---|---|---|---|
| ☐ 90/17 | ☐ 90/18 | CIVIL | A | | ☐ NOT POSTED | ☐ RADAR ☐ ESTIMATED | |

| | TOTAL DUE | DOCKET NUMBER |
|---|---|---|
| | $ | |

**SPEEDING ASSESSMENTS INCLUDE A $25 SURCHARGE FOR THE HEAD INJURY TRUST FUND**

| OFFICER CHECK ONE ONLY | ☐ ALL CIVIL INFRACTIONS (See instruction A on back) | ☐ CRIMINAL APPLICATION (See instruction B on back) | ☒ ARREST | ☐ WARNING (No action required by violator) |
|---|---|---|---|---|

COURT ADDRESS
50 HARVARD ST
Worcester, MA

| OFFICER CERTIFIES: | ☒ IN HAND TO VIOL | ☐ MAILED TO VIOL. | ☐ IN HAND TO VIOLATOR'S AGENT |
|---|---|---|---|
| X PO first sergeant #292 | | | |

VIOLATOR/AGENT ACKNOWLEDGES RECEIPT OF CITATION
X

Worcester Police Department
Incident Report

May 20, 2002                                                                    Monday 03:26

Single Narrative

| INCIDENT LOCAL # PRIORITY ACC REP | ACTIVITY ADDRESS (JURISDICTION) DISPOSITION | OFFICER(S) | RECEIVED DISPATCHED ARRIVED CLEARED | DISPATCHER SUPERVISOR NATURE INCIDENT TYPE |
|---|---|---|---|---|
| I0254157 4 No   No | PATROL INITIATED 165 GRAFTON ST Cross: 1 CORAL ST @156 1 PENN AV @208 WORCESTER, MA, 01604 (04) ARREST | TURGEON GUNNERSONS JOHANSONKR DANDREAMD HALLORAN | 05/20/2002, 00:43 05/20/2002, 00:44 05/20/2002, 00:45 05/20/2002, 01:13 | COLES SUSPICIOUS MV DISORDERLY PERS CT: COLES |

Caller's Info: 06L OTA

   Reported as: SUSPICIOUS MV    Found as: DISORDERLY PERS
Domestic Abuse: No

Dispatcher Remarks:
    06L CALLED OUT W/CAMPER PLATE MA REG#89092...JDC./... 1 PERSON IN
    CUSTODY...JDC./... @0046 - RT09L CALLED OUT FOR THE WAGON - CELLROOM
    NOTIFIED AND OTW....JDC./... PER RT08L - 1 W/F W/BROWN HAIR AND EITHER A
    BLUE OR BLACK COAT RAN FROM THE SCENE...SEARCHING THE AREA FOR THE FEMALE.
    JDC./.... PER RT08L - THE FEMALE HEADED UP CORAL ST...JDC./.... SHE IS
    MEDIUM TO HEAVY BLD...POSS. TRYING TO HEAD BACK TO ORIENT ST...JDC./....
    WAGON 84 HEADED TO CHARLIES TO PICK UP FEMALE ...COMP ARREST....BS CHARLIES
    LOC AT 240 GRAFTON...BS S/M 82614...BS E/M 82615...BS

| ARRESTED (Female) M0037351 | RUDY, RENEE E * 9 FREELAND ST  Apt: 2R WORCESTER MA  01603 Phone: 508-363-3942    Race: WHI Commt: ARRESTED: SUSPICIOUS MV | License: 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   (MA) SSN: 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 DOB: 10/28/1968 Age: 33 |
|---|---|---|
| ARRESTED (Male) M9541178 | HOUDE, DANIEL J * 18 ORIENT ST  Apt: 1 WORCESTER MA  01604 Phone: 754-3477     Race: WHI Commt: ARREST- M.V. / 94C | License: S94563027   (MA) SSN: 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 DOB: 03/14/1964 Age: 38 |
| VICTIM (Male) M0080319 | TURGEON, ROBERT 911 LINCOLN ST WORCESTER MA  01605 Phone: 799-8669 Commt: VICTIM A&B | License: None DOB: None Recorded |
| VICTIM (Male) M9907826 | GUNNERSON, STEPHEN 911 LINCOLN SQ WORCESTER MA  01608 Phone: 799-8669    Race: WHI Commt: VIC. A&B D.W. | License: None DOB: None Recorded |

Single Narrative

| INCIDENT LOCAL # PRIORITY ACC REP | ACTIVITY ADDRESS (JURISDICTION) DISPOSITION | OFFICER(S) | RECEIVED DISPATCHED ARRIVED CLEARED | DISPATCHER SUPERVISOR NATURE INCIDENT TYPE |
|---|---|---|---|---|

Incident I0254157 (continued)

Persons:

| VICTIM (Male) M9713688 | HALLORAN, BRIAN 9 LINCOLN SQ WORCESTER MA 01608 Phone: 799-8669     Race: WHI Commt: VIC. A&B | License: 034667763  (MA) DOB: 04/22/1971 Age: 31 |
|---|---|---|

| VICTIM (Male) M9928587 | JOHANSON, KEVIN 911 LINCOLN SQ WORCESTER MA 01608 Phone: 799-8620 Commt: VIC. A&B | License: None DOB: None Recorded |
|---|---|---|

Narrative(s):

Narr.  1: PO ROBERT TURGEON        Division: None      Status: Open        [I0254157]
    Title: ARREST NARRATIVE        Entered: PO ROBERT TURGEON              Date: 05/20/02
                                   Reviewed: No officer                    Edit: 05/20/02

   ON 05/20/02 AT APPROXAMETLY 0043 HRS. I WAS ON PATROL IN A MARKED CRUISER
ON GRAFTON ST. WHEN I OBSERVED A FORD CAMPER TRAVELING WEST ON GRAFTON ST. WHEN
I NOTICED THAT THE LICENSE PLATE ATTACHED TO THE REAR OF THE CAMPER, MA. 89092,
WAS HANGING OFF. THE M.V. PULLED INTO A GAS STATION AT 263 GRAFTON ST. I PULLED
INTO THE SAME PARKING LOT AND NOTICED THAT THE FRONT PLATE, MA. 82903, WAS
DIFFERENT FROM THE FRONT PLATE. AS THE VEHICLE LEFT THE LOT AND CONTINUED DOWN
GRAFTON ST. WHEN I ACTIVATED MY EMERGENCY LIGHTS AND ATTEMPTED TO STOP THE
VEHICLE. THE VEHICLE REFUSED TO STOP AND CONTINUED DOWN GRAFTON ST. AND DROVE
INTO A BACK PARKING LOT AT 165 GRAFTON ST. I ADVISED DISPATCH AND ASKED FOR
ADDITIONAL CARS. P.O.'S STEVE GUNNERSON , KEVIN JOHANSON ARRIVED TO ASSIST.I
APPROACHED THE DRIVERS SIDE AND ASKED THE DIVER TO LOWER HIS WINDOW IT WAS AT
THIS POINT THAT THE DRIVER, LATER IDENTIFIED AS DANIEL HOUDE (03/14/64),
REACHED OVER AND LOCKED HIS DOOR. FEARING FOR THE MY SAFETY AND THE SAFETY OF
THE OFFICERS PRESENT I ORDERED HOUDE TO UNLOCK THE DOOR AND EXIT THE VEHICLE,
HE REFUSED, HOUDE KEPT HIS HANDS IN HIS WAIST AREA ATTEMPTING TO HIDE
SOMETHING. I REPEATED THIS ORDER SEVERAL MORE TIMES WITHOUT COMPLIANCE, P.O.
JOHANSON STATED THAT HE WAS GOING TO ENTER THE VEHICLE THROUGH AN UNLOCKED SIDE
DOOR.
   AS JOHANSON ENTERED THE M.V. HE UNLOCKED THE DOOR AND WE ATTEMPTED TO GET
HOUDE OUT OF THE VEHICLE. AT FIRST HE REFUSED TO LET GO OF THE STEERING WHEEL
WITH HIS RIGHT HAND WHILE KEEPING HIS LEFT HAND CLOSED. HE THEN BEGAN TO
VIOLENTLY STRUGGLE, FLAILING AND SWINGING HIS ARMS. AT SOME POINT IN THE
BEGINNING OF THE STRUGGLE P.O. GUNNERSON WAS AT THE PASSENGER DOOR. IN THE SEAT
WAS A FEMALE, LATER IDENTIFIED AS RENEE RUDY (10/28/68), WHILE JOHANSON AND I
WERE STRUGGLING WITH HOUDE RUDY ATTEMPTED TO EXIT THE VEHICLE WITH GUNNERSON
STANDING THERE. GUNNERSON ADVISED HER TO STAY IN THE VEHICLE AT WHICH POINT

| INCIDENT LOCAL # PRIORITY ACC REP | ACTIVITY ADDRESS (JURISDICTION) DISPOSITION | OFFICER(S) | RECEIVED DISPATCHED ARRIVED CLEARED | DISPATCHER SUPERVISOR NATURE INCIDENT TYPE |
|---|---|---|---|---|

Narrative  1 (continued)  By: PO ROBERT TURGEON            Incident I0254157

RUDY FLUNG OPEN THE DOOR VIOLENTLY AND STRUCK P.O. GUNNERSON RIGHT ARM AND
SHOULDER. GUNNERSON, SEEING US STRUGGLING WITH HOUDE, ENTERED THE M.V. TO
ASSIST US. RUDY FLED THE SCENE ON FOOT AND WAS FOUND AT UNCLE CHARLIE'S TAVERN
ON GRAFTON ST. WERE SHE BECAME LOUD AND BOISTEROUS CAUSING A DISTURBANCE INSIDE
THE BUSINESS.
    P.O.'S JOHANSON, GUNNERSON AND I CONTINUED TO ATTEMPT TO PLACE HOUDE INTO
CUSTODY. HE WAS TOLD SEVERAL TIMES BY THE THREE OF US TO STOP RESISTING AND PUT
HIS HANDS BEHIND HIS BACK. DURING THIS TIME HOUDE PUNCHED ME IN THE RIBS AND
PUNCHED P.O. JOHANSON IN THE NECK AREA. HE ALSO KICKED P.O. GUNNERSON IN THE
CHEST. OTHER OFFICERS HEARD THE STRUGGLE OVER OUR PORTABLE RADIOS AND ARRIVED
AT THE SCENE TO ASSIST. P.O.'S BRIAN HALLORAN, MATTHEW D'ANDREA, THOMAS DUFFY
AND SEAN MCCANN ARRIVED AND BEGAN TO ASSIST IN PUTTING HOUDE INTO CUSTODY. WHEN
THESE OFFICERS ARRIVED WE WERE STILL IN THE CAMPER AT THE SIDE DOOR, I OBSERVED
HOUDE DROP SOMETHING OUT OF HIS STILL CLOSED LEFT HAND. I WAS ABLE TO RECOVER
THIS ITEM AND UPON FURTHER INSPECTION IT WAS DISCOVERED TO BE A SMALL PLASTIC
BAGGIE "CORNER" WHICH CONTAINED A HARDENED WHITE SUBSTANCE, WHICH THROUGH MY
TRAINING AND EXPERIENCE I BELIEVED TO BE CRACK COCAINE. WE CONTINUED TO FIGHT
WITH HOUDE AND AT THE POINT WHEN HOUDE WAS BEING TAKEN FROM THE CAMPER HE LOST
HIS FOOTING AND LANDED ON THE PAVEMENT. HOUDE CONTINUED TO STRUGGLE FOR SEVERAL
MORE MINUTES AT WHICH POINT P.O. DUFFY ADVISED HOUDE THAT IF HE DID NOT COMPLY
THAT HE WOULD BE SPRAYED WITH O.C. AFTER ANOTHER WARNING P.O. DUFFY SPRAYED
HOUDE WITH HIS DEPARTMENT ISSUE O.C. SPRAY FOR A ONE SECOND BURST INTO TO THE
FACE AREA. HOUDE BEGAN TO COMPLY AND WAS PLACED IN HANDCUFFS. HE WAS REMOVED
FROM THE AREA OF O.C. SPRAY ADVISED OF ITS EFFECTS. SOMETIME DURING THE
ALTERCATION HOUDE SUFFERED A LACERATION ABOVE HIS EYE.
    THE PATROL WAGON ARRIVED AND IMMEDIATELY TRANSPORTED HOUDE TO UMASS
MEMORIAL FOR TREATMENT FOR HIS LACERATION AND THE EFFECTS OF THE O.C. SPRAY.
THE FEMALE, RENEE RUDY WAS ALSO PLACED UNDER ARREST AND TRANSPORTED TO THE
CELLROOM FOR BOOKING.
    SEVERAL OFFICERS WERE EXPOSED TO HOUDE BLOOD AND WE WERE MET BY MEDIC 1
AND THEY ASSISTED US IN CLEANING OFF THE BLOOD. THEY ALSO EXAMINED P.O.
HALLORAN AND MYSELF FOR INJURIES WE SUFFERED IN THE ALTERCATION. HALLORAN
SUFFERED A CONTUSION TO HIS FOREARM AND ALSO AN ABRASION TO HIS ELBOW. HE DID
NOT SEEK FURTHER TREATMENT. I SUFFERED AN INJURY TO MY RIGHT HAND WHICH THE
PARAMEDIC STATED COULD BE A "BOXER'S FRACTURE" AND HE ADVISED ME OF MY OPTIONS.
AT THIS TIME I DID NOT SEEK FURTHER TREATMENT.

    THE LICENSE PLATES WERE RUN THROUGH CJIS AND THE REAR PLATE, 89092, CAME
BACK AS NO MATCHING RECORD FOUND. THE FRONT PLATE, 82903, CAME BACK EXPIRED TO
A MARY STELLATO OF MATTAPOISET MA. AT THIS TIME SHE COULD NOT BE CONTACTED.
BOTH PLATES WERE CONFISCATED AND WILL BE TURNED INTO THE REGISTRY OF MOTOR
VEHICLES. THE COCAINE WAS TURNED IN AT THE SERVICE DIVISION TO BE PICKED UP BY
THE VICE SQUAD AND SENT OUT FOR ANALYSIS.
    RENEE RUDY'S CHARGES ARE:
        1. DISORDERLY BEHAVIOR
        2. DISTURBING THE PEACE
        3. A&B BY DANGEROUS WEAPON (TO WIT: CAR DOOR)

Worcester Police Department
Incident Report

May 20, 2002                                                              Monday 03:26

**Single Narrative**

| INCIDENT LOCAL # PRIORITY ACC REP | ACTIVITY ADDRESS (JURISDICTION) DISPOSITION | OFFICER(S) | RECEIVED DISPATCHED ARRIVED CLEARED | DISPATCHER SUPERVISOR NATURE INCIDENT TYPE |
|---|---|---|---|---|

Narrative   1 (continued)  By: PO ROBERT TURGEON          Incident I0254157

    4. RESISTING ARREST
    5. WARRANT- UNLICENSED OPERATION/SPEEDING (DEF. DOCKET 0062CR006216)

DANIEL HOUDE'S CHARGES ARE:
    1. ILLEGAL POSS. OF A CLASS B SUB.
    2. A&B BY DANGEROUS WEAPON (TO WIT: SHOD FOOT)
    3. A&B ON A POLICE OFFICER
    4. A&B ON A POLICE OFFICER
    5. A&B ON A POLICE OFFICER
    6. RESISTING ARREST
    7. FAILURE TO STOP FOR A POLICE OFFICER
    8. ILLEGALLY ATTACHING PLATES
    9. OPER. AN UNREG. M.V.
    10. OPER. AN UNINSURED M.V.  (CITATIONS K0773490 AND K0773491 WERE ISSUED)
    THE CAMPER WAS LEFT AT THE SCENE BECAUSE IT WAS ON PRIVATE PROPERTY.
DISPATCH WAS NOTIFIED IN THE EVENT THE OWNER OF THE PROPERTY CALLED.

REPORTING OFFICER _____          DATE _____

REVIEWING OFFICIAL _____         DATE _____

| CRIMINAL COMPLAINT | 0262CR005098 |
|---|---|

**Trial Court of Massachusetts**

**Worcester District Court**

DEFENDANT

HOUDE, DANIEL J
18 ORIENT ST #1
WORCESTER, MA 01604

TO ANY JUSTICE OR CLERK-MAGISTRATE
OF THE WORCESTER DISTRICT COURT

| DATE OF BIRTH | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|
| 03/14/1964 | M | W | 5'08" | 150 | BRO | BRO |

| INCIDENT REPORT # | SOCIAL SECURITY # |
|---|---|
| I0254157 | 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 |

| DATE OF OFFENSE | PLACE OF OFFENSE |
|---|---|
| 05/20/2002 | WORCESTER |

The undersigned complainant, on behalf of the Commonwealth, on oath complains that on the date and at the location stated herein the defendant did commit the offense(s) listed below.

| COMPLAINANT | POLICE DEPARTMENT |
|---|---|
| SWIFT, LT BARBARA | WORCESTER PD |

| DATE OF COMPLAINT | RETURN DATE AND TIME |
|---|---|
| 05/20/2002 | |

COUNT-OFFENSE

1. 94C/34/C  DRUG, POSSESS CLASS B c94C §34

on 05/20/2002, not being authorized by law, did knowingly or intentionally possess a controlled substance in Class B of G.L. c.94C, §31, to wit: COCAINE, in violation of G.L. c.94C, §34.  (PENALTY: imprisonment not more than 1 year; or not more than $1000; or both.)

COUNT-OFFENSE

2. 265/15A/A  A&B WITH DANGEROUS WEAPON  c265 §15A(b)

on 05/20/2002 did, by means of a dangerous weapon, a SHOD FOOT, assault and beat STEVE GUNNERSON, in violation of G.L. c.265, §15A(b). (PENALTY: state prison not more than 10 years; or jail not more than 2½ years; or not more than $1000. District Court has final jurisdiction under G.L. c.218, § 26.)

COUNT-OFFENSE

3. 265/13D/A  A&B ON POLICE OFFICER c265 §13D

on 05/20/2002 did assault and beat ROBERT TURGEON, a police officer who was then engaged in the performance of his or her duties, in violation of G.L. c.265, §13D.  (PENALTY: house of correction not less than 90 days, not more than 2½ years; or not less than $500, not more than $5000.)

COUNT-OFFENSE

4. 265/13D/A  A&B ON POLICE OFFICER c265 §13D

on 05/20/2002 did assault and beat KEVIN JOHNSON, a police officer who was then engaged in the performance of his or her duties, in violation of G.L. c.265, §13D.  (PENALTY: house of correction not less than 90 days, not more than 2½ years; or not less than $500, not more than $5000.)

| COMPLAINANT | SWORN TO BEFORE CLERK-MAGISTRATE | ON (DATE) | TOTAL COUNTS |
|---|---|---|---|
| X | X | 5·20 02 | 10 |
| FIRST JUSTICE Hon. Elliott Zide | COURT ADDRESS  Worcester District Court | | |

| A TRUE COPY ATTEST: X | CLERK-MAGISTRATE/ASST. CLERK | ON (DATE) | 50 Harvard Street Worcester, MA 01608 |
|---|---|---|---|

# ADDITIONAL COUNTS

COUNT-OFFENSE

## 5.  265/13D/A  A&B ON POLICE OFFICER c265 §13D

on 05/20/2002 did assault and beat BRIAN HALLORAN, a police officer who was then engaged in the performance of his or her duties, in violation of G.L. c.265, §13D. (PENALTY: house of correction not less than 90 days, not more than 2½ years; or not less than $500, not more than $5000.)

COUNT-OFFENSE

## 6.  268/32B  RESIST ARREST c268 §32B

on 05/20/2002 did knowingly prevent or attempt to prevent a police officer, as defined in G.L. c. 268, §32B(c), who was acting under color of his or her official authority, from effecting an arrest, by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using some other means which created a substantial risk of causing bodily injury to such police officer or another, in violation of G.L. c. 268, §32B. (PENALTY: jail or house of correction for not more than 2½ years; or not more than $500; or both.)

COUNT-OFFENSE

## 7.  90/25/D  STOP FOR POLICE, FAIL c90 §25

on 05/20/2002, while operating or in charge of a motor vehicle, did refuse or neglect to stop when signalled to stop by a police officer who was in uniform or who displayed his or her badge conspicuously on the outside of his or her outer coat or garment, in violation of G.L. c.90, §25. (PENALTY: $100.)

COUNT-OFFENSE

## 8.  90/23/G  NUMBER PLATE VIOLATION TO CONCEAL ID c90 §23

on 05/20/2002, with intent to conceal the identity of a motor vehicle or trailer: (1) did attach or permit to be attached thereto a number plate assigned to another motor vehicle or trailer; or (2) did obscure or permit to be obscured the figures on a number plate attached thereto; or (3) did fail to display thereon the number plate and the register number duly issued therefor, in violation of G.L. c.90, §23. (PENALTY: imprisonment not more than 10 days; or not more than $100; or both.)

COUNT-OFFENSE

## 9.  90/34J  UNINSURED MOTOR VEHICLE c90 §34J

on 05/20/2002 did operate, or permit to be operated, or permit to remain, on a public or private way a motor vehicle or trailer that was subject to the provisions of G.L. c.90, §1A during such time as the motor vehicle liability policy or bond or deposit required by G.L. c.90 had not been provided and maintained in accordance therewith, in violation of G.L. c.90, §34J. (PENALTY: house of correction not more than 1 year; or not less than $500, not more than $5000; or both; and shall be liable to pay to the Safe Driver Insurance Plan the greater of $500 or one year's premium for compulsory motor vehicle insurance for the highest rated territory and class or risk; RMV shall suspend license for 60 days, or for 1 year upon 2nd or subsequent offense within 6 years.)

COUNT-OFFENSE

## 10.  90/9/B  UNREGISTERED MOTOR VEHICLE * c90 §9

NOTE: THIS IS A CIVIL MV INFRACTION, SET FORTH HERE FOR PROCEDURAL PURPOSES ONLY.  on 05/20/2002 did operate, push, draw or tow a motor vehicle or trailer, or being the owner or custodian of a motor vehicle or trailer did permit it to be operated,pushed, drawn or towed or to remain, on a way, as defined by G.L. c.90, §1, without such vehicle or trailer being registered according to law, not being exempted from such requirement by law, in violation of G.L. c.90, §9. (CIVIL ASSESSMENT: $100; 2nd offense: $1000.)

| COMPLAINANT | | SWORN TO BEFORE CLERK-MAGISTRATE/ASST. CLERK | ON (DATE) |
| --- | --- | --- | --- |
| X | | X | 5-30-02 |

DOCKET NUMBER

**0262CR005098**

## FINDING OF JUDGE -- DETERMINATION OF INDIGENCY

After considering the report and recommendation of the probation officer or other appropriate court employee, and after interrogating the defendant named in the complaint on the reverse side, if appropriate, based upon the standards in Supreme Judicial Court Rule 3:10, **I FIND THAT THE DEFENDANT IS:**

☐ **INDIGENT** because the defendant:

    ☐ receives Aid to Families with Dependent Children (AFDC).

    ☐ receives Emergency Aid to Elderly, Disabled and Children (EAEDC).

    ☐ receives poverty-related veterans' benefits.

    ☐ receives food stamps.

    ☐ receives refugee resettlement benefits.

    ☐ receives Medicaid.

    ☐ receives Supplemental Security Income (SSI).

    ☐ is a patient in a mental health facility or treatment center (or is the subject of a proceeding for admission to such a facility) and lacks available funds.

    ☐ is serving a sentence in a correctional institution and has no available funds.

    ☐ is held in custody in a jail and has no available funds.

    ☐ has an annual income, after taxes, 125% or less of the current poverty threshold referred to in G.L. c. 261, § 27A(b).

    ☐ is determined to be indigent pursuant to S.J.C. Rule 3:10, Section 4(b) [Judge's Section 4(b) findings on the record are appended].

☐ **INDIGENT BUT ABLE TO CONTRIBUTE,** and is therefore ordered to pay

    $_____ toward the cost of counsel because the defendant:

    ☐ has an annual income, after taxes, of more than 125% and less than 250% of the current poverty threshold referred to in G.L. c. 261, § 27A(b).

    ☐ is charged with a felony within the jurisdiction of the Superior Court and has available funds sufficient to pay a portion of the anticipated cost of counsel.

    ☐ is determined to be indigent but able to contribute pursuant to S.J.C. Rule 3:10, Section 4(b) [Judge's Section 4(b) findings on the record are appended].

☐ **NOT INDIGENT** and is able to pay the anticipated cost of counsel [Judge's findings on the record are appended if this finding is pursuant to S.J.C. Rule 3:10, Section 4(b)].

_____    _____
        Date                    District Court Justice

## CERTIFICATE OF JUDGE -- WAIVER OF COUNSEL

I hereby certify that the defendant named in the complaint on the reverse side has been informed of his/her right to counsel in accordance with Supreme Judicial Court Rule 3:10 and G.L. c. 211D, §5; that he/she has knowingly elected to proceed without a lawyer, and that he/she has:

    ☐ Executed a waiver of counsel in my presence.

    ☐ Refused to sign a waiver.

_____    _____
        Date                    District Court Justice

# **<u>EXHIBIT D</u>**

1

1    VOL. I
     Pp. 1 - 75
2    Exhibits 1 - 1

3

4              UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF MASSACHUSETTS
5

6                      C.A. NO.   05-40075FDS

7

    * * * * * * * * * * * * * * * * * *
8
    DANIEL HOUDE,
9
         Plaintiff
10
    VS.
11
    ROBERT TURGEON, STEPHEN
12  GUNNERSON, KEVIN JOHANSON,
    MATTHEW D'ANDREA, BRIAN HALLORAN,
13  THOMAS DUFFY, SEAN McCANN, AND
    CITY OF WORCESTER,
14
         Defendants
15
    * * * * * * * * * * * * * * * * * *
16

17

18        Deposition of SEAN McCANN, a witness called by

19  counsel for the Plaintiff, pursuant to the applicable

20  rules, before Lorreen Hollingsworth, CSR/RPR,

21  CSR NO. 114793, and Notary Public in and for the

22  Commonwealth of Massachusetts, at the Offices of David

23  Zirken, 20 Main Street, Natick, Massachusetts, on

24  Thursday, May 25, 2006, at 10:20 a.m.


                 HOLLINGSWORTH & ASSOCIATES
                      (781) 235-1424

Page 57

1 interaction with him?

2 A No.

3 Q Had you ever heard of Daniel Houde from any

4 other police officers in Worcester?

5 A No.

6 MS. McGUIGGAN: Prior to

7 May 20, 2002?

8 Q Before May 20, 2002, had you ever heard of

9 Daniel Houde?

10 A Had I? No.

11 Q Before May 20, 2002, had you seen Daniel

12 Houde's food truck anywhere in Worcester?

13 MS. McGUIGGAN: I object to the

14 form. You can answer.

15 A No. I don't remember seeing it. I'm sure

16 I passed it. I didn't pay special

17 attention to it.

18 Q So it's your testimony that before May 20,

19 2002, you had never heard of Daniel Houde?

20 A Right.

21 Q And before May 20, 2002, you had never seen

22 Daniel Houde's food trucks in Worcester?

23 MS. McGUIGGAN: Objection.

24 A As I said -- I had no dealings with

Page 58

1 Mr. Houde. I'm sure I saw his truck

2 somewhere once or twice. But I had no

3 dealings with Mr. Houde.

4 Q After May 20, 2002, did you ever have any

5 interaction with Daniel Houde?

6 A Not that I remember.

7 Q So it's possible that you did have an

8 interaction with Daniel Houde after May 20,

9 2002, but you don't remember?

10 A I don't remember dealing -- that's the only

11 incident I remember dealing with Daniel

12 Houde, in my career.

13 Q So it's possible that you did have another

14 dealing with him after May 20, 2002, that

15 you don't remember today?

16 A It's possible.

17 Q Did you have any conversations with your

18 fellow police officers about Daniel Houde

19 after May 20, 2002?

20 A When I got served with the papers for this

21 lawsuit, but no sit-down conversations. I

22 just asked them if they got -- received the

23 same stuff I did, if they had gone to see

24 the City lawyer.

Page 59

1 Q You never talked about what happened that

2 evening on May 20, 2002, with your fellow

3 officers?

4 A Like I said, I got there after he was

5 already in handcuffs.

6 Q That's not what I asked.

7 A So I had a very limited role there. So,

8 no, I didn't discuss with them.

9 Q I'm not asking about your role in it. I

10 want to know whether or not you talked

11 about what happened that night with the

12 other Worcester Police officers.

13 A No, I did not.

14 Q You never spoke with them about it?

15 A No.

16 Q Can you tell me your role, if any, in what

17 took place May 20, 2002?

18 MS. McGUIGGAN: I object to

19 the form. You can answer.

20 A I arrived at the scene after he was already

21 in handcuffs. They said there was a female

22 that left from the vehicle that Houde was

23 in, and I went and searched the -- there

24 are a few bars on Grafton Street where the

Page 60

1 incident -- the location was, and we went

2 inside the bars. And I believe it was

3 Officer Duffy and I found the female inside

4 in Charlie's Tavern.

5 Q First, what was the address of the

6 incident?

7 A I think it was Frank's Flowers. I'm not

8 sure of the exact address. I know it was

9 Grafton Street. It was lower Grafton

10 Street by 290.

11 Q Do you recall where the vehicles were

12 parked at the scene of the incident when

13 you arrived?

14 A Which vehicles?

15 Q Any police cruisers, Mr. Houde's vehicle,

16 any other vehicles that were on the scene.

17 A His vehicle was inside the parking lot to

18 Frank's Flowers, and I believe most of the

19 police cruisers were in there, but I'm sure

20 some of them were parked on Grafton Street.

21 Q Would you be able to draw a diagram of what

22 you remember about the location of vehicles

23 and Mr. Houde and any police officers at

24 the scene when you arrived on May 20, 2002?

# EXHIBIT E

1

```
 1                                    VOL. I
                                      Pp. 1 - 45
 2                                    Exhibits:  None

 3

 4                  UNITED STATES DISTRICT COURT
              FOR THE CENTRAL DISTRICT OF MASSACHUSETTS
 5
                              C.A. NO.  05-40075FDS
 6

 7     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

 8     DANIEL HOUDE,

 9          Plaintiff

10     VS.

11     ROBERT TURGEON, STEPHEN
       GUNNERSON, KEVIN JOHANSON,
12     MATTHEW D'ANDREA, BRIAN HALLORAN,
       THOMAS DUFFY, SEAN McCANN, AND
13     CITY OF WORCESTER,

14          Defendants

15     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

16

17          Deposition of MATTHEW D'ANDREA, a witness called

18     by counsel for the Plaintiff, pursuant to the

19     applicable rules, before Lorreen Hollingsworth,

20     CSR/RPR, CSR NO. 114793, and Notary Public in and for

21     the Commonwealth of Massachusetts, at the Offices of

22     David Zirken, 20 Main Street, Natick, Massachusetts,

23     on Tuesday, May 23, 2006, at 2:55 p.m.

24
```

Page 29

1     that's his general recollection.
2        What I'm asking you is: If
3     you have a recollection of where you think
4     you may have been parked that night.
5 A   I would say somewhere probably northbound,
6     that same circle somewhere.
7 Q   Were there any cruisers from the Worcester
8     Police Department on the left side of
9     Mr. Houde's vehicle?
10 A   I don't recall. I don't know.
11 Q   And so you pulled in and parked your
12     cruiser; is that fair to say?
13 A   Correct.
14 Q   And you and Mr. Halloran exited the
15     cruiser?
16 A   Correct.
17 Q   And that was approximately three minutes
18     after you first heard that Officer Turgeon
19     had pulled over the vehicle?
20 A   That's a rough time frame. It's been a
21     long time, but I would say, you know,
22     approximately.
23 Q   You did you observe other officers at the
24     scene?

Page 30

1 A   Yes, I did.
2 Q   And who else was there when you arrived?
3 A   Officer Turgeon was and Officer Gunnerson
4     was, I believe. Those were the two I saw
5     initially.
6 Q   And was Officer Johanson there yet?
7 A   I didn't see him initially, so I'm not
8     sure.
9 Q   And where did you observe Officer Turgeon?
10      MS. McGUIGGAN: When he first
11     arrived?
12 Q   When you first arrived. What was his
13     position in relation to the car?
14 A   Outside of the camper out here.
15 Q   So you pointed. Were you indicating that
16     he was behind the camper?
17 A   No. If this is the direction -- if it's
18     facing Frank's Flower Shop, he was to my
19     left. So on the left side where the door
20     was open, he was standing a few feet away
21     from the door.
22      MS. McGUIGGAN: On the
23     passenger's side?
24      THE WITNESS: Correct.

Page 31

1 Q   So when you arrived at the scene, Officer
2     Turgeon was on the passenger side of the
3     vehicle?
4 A   Correct.
5 Q   And where was Officer Gunnerson?
6 A   I believe he was on the passenger side as
7     well.
8 Q   And what were those two officers doing when
9     you arrived?
10 A   They were ordering Mr. Houde out of the
11     vehicle.
12 Q   And where was Mr. Houde?
13 A   In the doorway of the camper.
14 Q   And was the door of the camper open?
15 A   Yes, it was.
16 Q   And when you say the "doorway of the
17     camper," was that the back of the vehicle?
18 A   I don't remember if it was in the middle or
19     the back. But there was a side door; it
20     wasn't the actual back of the camper.
21 Q   There was a side door on the passenger side
22     of the camper, is that right?
23 A   From what I remember, yes, yeah.
24 Q   And so when you arrived, Officer Turgeon

Page 32

1     and Officer Gunnerson were standing in
2     front of that side door of the camper, and
3     Mr. Houde was standing in that door with
4     the door open?
5 A   Correct.
6 Q   And were they having a discussion?
7 A   I know they were ordering him out, and I
8     observed Mr. Houde kick several times at
9     the officers.
10 Q   Okay. So immediately upon your arrival,
11     Mr. Houde was standing in that doorway, and
12     he was ordered out of the camper. But
13     instead of exiting the camper, he attempted
14     to kick the officers?
15 A   Yes.
16 Q   And what did you do at that time?
17 A   I know Officer Halloran went up to the
18     camper door.
19 Q   I'm sorry, who did you say?
20 A   Officer Halloran, who I was with. I'm not
21     sure exactly where the cars were
22     positioned. I think I had to go around.
23      So I think Officer Halloran
24     got to the camper first. And it appears

Page 33

1　　that -- from what it looked like, that
2　　Officer Houde -- I mean, Daniel Houde tried
3　　to hop over Officer Halloran. Officer
4　　Halloran went up to the door to try to get
5　　him out, and it looked like he tried to
6　　actually leap over Officer Halloran.
7　Q　So did Officer Halloran go between
8　　Officer Gunnerson and Officer Turgeon, who
9　　were already at that location?
10　A　Yes, I believe he did.
11　Q　And is there a reason that he approached
12　　Mr. Houde rather than the other two
13　　officers?
14　　　　MS. McGUIGGAN: Objection.
15　Q　You can answer.
16　A　I don't know.
17　Q　And I'm sorry, what did you say you did?
18　　You went to the other side of the vehicle?
19　A　Yeah. I don't know how the vehicles were
20　　positioned in here, but it took me a little
21　　more time to come around to the actual
22　　front of the camper, as opposed to Officer
23　　Halloran, who had a direct line to it.
24　Q　And what happened next?

Page 34

1　A　I know -- Daniel Houde and Officer Halloran
2　　both fell back. Then I believe Officer
3　　Turgeon and Officer Gunnerson assisted
4　　Officer Halloran with Mr. Houde. And then
5　　there was a dog of some sort that Houde was
6　　yelling to try to -- I don't know if he
7　　actually came out the side door or came
8　　around from the opposite -- the driver's
9　　side of the vehicle, but the dog came
10　　around, and I was watching the dog to make
11　　sure it didn't bite anybody. Houde was
12　　yelling for the dog to sic people and stuff
13　　like that.
14　Q　So did you hold the dog?
15　A　No, I didn't touch it. I made sure that it
16　　wasn't going to take anybody. I was going
17　　to take action if it went after an officer.
18　Q　And what kind of a dog was that?
19　A　It wasn't a German shepherd, but I'd
20　　compare it to something that size.
21　Q　And did the German shepherd approach --
22　A　It wasn't a German shepherd, but it was
23　　relative to a dog that size.
24　Q　Did the dog approach the officers who were

Page 35

1　　subduing Mr. Houde?
2　A　Yes, it did come over to the front of
3　　Mr. Houde. And I believe Officer Gunnerson
4　　was there and looking at the dog, and I
5　　said, Don't worry about the dog. I'll take
6　　care of it.
7　Q　And did it appear to you that the dog was
8　　putting Officer Gunnerson in some sort of
9　　fear?
10　　　　MS. McGUIGGAN: Objection.
11　A　I wouldn't say -- I mean, I don't know. I
12　　can't put it in -- I can't be in his spot.
13　　Can I say that the dog was -- it was
14　　barking. It was -- it appeared to be
15　　somewhat of a vicious-type dog. But I told
16　　him, Don't worry about it, I'll take care
17　　of the dog.
18　Q　And how close did the dog come to Officer
19　　Gunnerson before you took care of the dog?
20　A　Well, I mean, I didn't see -- when I say
21　　"take care of," I was watching the dog. If
22　　the dog was going to go bite somebody or to
23　　that extent, I would have taken action.
24　　That's what I was telling him.

Page 36

1　　　　I don't know how close, maybe
2　　5 feet.
3　Q　And were you ever in fear that the dog was
4　　about to attack Officer Gunnerson?
5　A　No, I wouldn't say I was in fear. But I
6　　was watching to make sure that it didn't.
7　Q　And when you were being mindful of the dog,
8　　what was Officer Gunnerson doing?
9　A　I believe he was trying to handcuff
10　　Mr. Houde. They were trying to take him
11　　into custody.
12　Q　And how was he doing that?
13　A　I don't know. I was watching the dog. I
14　　was worried that the dog might bite an
15　　officer. I was more concerned about that
16　　than what was going on.
17　Q　So did you have your back to Mr. Houde and
18　　Officer Gunnerson while you were watching
19　　the dog?
20　A　I believe I got in the way of the dog and
21　　Officer Gunnerson, so my back would have
22　　been to them.
23　Q　And when you got in between Officer
24　　Gunnerson and the dog, how far were you

Page 37

1    from Officer Gunnerson?
2  A  A couple feet maybe.
3  Q  And how far was the dog from you?
4  A  A couple feet.
5  Q  And did the dog ever get around you to
6      Officer Gunnerson?
7  A  No.
8  Q  And, indeed, that's what you were there to
9      prevent; is that fair to say?
10 A  Correct.
11 Q  And so the dog was closer to Officer
12     Gunnerson than he was to you?  Is that fair
13     to say as well?
14 A  Could you ask that question again?
15 Q  So if you were between where the dog was
16     and where Officer Gunnerson was, you
17     were -- at all times, you were closer to
18     Officer Gunnerson than the dog was?
19         MS. McGUIGGAN:  Objection.
20 Q  Is that fair to say?
21         MS. McGUIGGAN:  I don't think
22     the dog was in that position the whole
23     time.
24 A  Correct.  I wouldn't say the whole time,

Page 38

1      no.
2  Q  Was there a time when the dog was closer to
3      Officer Gunnerson than he was to you?
4  A  He might have been initially, prior to me
5      getting between Officer Gunnerson and the
6      dog.
7  Q  Did you ever witness the dog being closer
8      to Officer Gunnerson than he was to you?
9  A  I wasn't really concerned about the
10     distance of Officer Gunnerson and the dog.
11     So I really can't answer that question.
12 Q  What happened after you started looking at
13     the dog?  Did you see any of the action
14     between Mr. Houde and any of the other
15     officers?
16 A  I'm sure I did see some, but I don't recall
17     exactly what.
18 Q  As you sit here today, you can't recall
19     anything that you saw that night between
20     Mr. Houde and any of the officers once you
21     started looking at that dog?  Is that what
22     your testimony is?
23 A  Correct.
24 Q  Okay.  And at some point were you aware

Page 39

1      that Mr. Houde was placed under arrest?
2  A  I'm sorry.
3  Q  Were you aware that at some point that
4      morning Mr. Houde was placed under arrest?
5  A  Correct.
6  Q  And how long was it from the time that you
7      arrived at the scene until Mr. Houde was
8      placed under arrest?
9  A  I'd say several minutes.
10 Q  Was it --
11 A  Approximately.  I mean --
12 Q  Would you say that it was more or less than
13     10 minutes?
14 A  I'd say it was probably less than
15     10 minutes.
16 Q  Would you say it was more or less than five
17     minutes?
18 A  I'd say it was probably less than five
19     minutes.
20 Q  Did you ever see Officer Gunnerson strike
21     Mr. Houde in the face?
22 A  No, I didn't.
23 Q  Did you ever see any officers strike
24     Mr. Houde?

Page 40

1  A  No, I didn't.
2  Q  Are you aware that Mr. Houde received
3      pepper spray that night?
4  A  I heard it afterward.  But I didn't see
5      that as well.
6  Q  When did you hear that that had happened?
7  A  I don't know if it was back at the station
8      or later on.  I really don't remember.
9  Q  But it wasn't at the scene; is that fair to
10     say?
11 A  I really don't remember.  It could have
12     been at the scene.  I really don't recall.
13 Q  Do you know who administered the pepper
14     spray?
15 A  I heard Officer Duffy administered it.
16 Q  But you don't know that for a fact?
17 A  Correct.
18 Q  And did you write a police report in this
19     matter?
20 A  I did not.
21 Q  Why not?
22 A  Usually the arresting officer is the one
23     who submits an arrest report, and then
24     that's it, usually.

# **EXHIBIT F**

# POLICY AND PROCEDURE                    NO. 400



| | Use of Force | | |
|---|---|---|---|
| date issued<br>Sep 1, 1993 | date effective<br>Sep 1, 1993 | revision no. | no. of pages<br>6 |

## GENERAL CONSIDERATIONS AND GUIDELINES

Because of his law enforcement and peacekeeping role, a police officer will be required at times to resort to the use of physical force to enable him to fully carry out his responsibilities. Police officers are confronted continually with situations requiring or resulting in the use of various degrees of force to effect a lawful arrest, to ensure public safety, or to protect himself or others from harm. The degree of force used is dependent upon the facts surrounding the situation the officer faces. Only a reasonable and necessary amount of force may be used. The degree of force the officer is forced to use is dependent upon the amount of resistance or threat to safety the situation produces.

The objective of the use of force is to maintain and/or reestablish control over a situation. Control is reached when a person complies with the officer's directions and/or the suspect is restrained or apprehended and no longer presents a threat to the officer or another. Since an officer will encounter a wide range of behaviors, the officer must be prepared to utilize a range of force options that are reasonable and necessary to maintain and/or reestablish control by overcoming resistance to the officer's lawful authority while minimizing injuries.

Because there are an unlimited number of possibilities, allowing for a wide variety of circumstances, no written directive can offer definitive answers to every situation in which the use of force might be appropriate. Rather, this directive will set certain specific guidelines and provide officers with a concrete basis on which to utilize sound judgment in making reasonable and prudent decisions.

## DEFINITIONS

1. Use of force as outlined in this policy statement means both non-deadly force and deadly force, such as the use of hands, handcuffs or other restraining devices, chemical substances, agents or similar devices or instruments for the emission of gas, and police or riot batons and firearms.

2. <u>Deadly Force:</u> Deadly force as used in this policy is defined as that degree of force which a reasonable and prudent person would consider likely to cause death or serious physical injury and is further detailed in separate policy on firearms.

3. <u>Non-deadly force:</u> Non-deadly force shall mean that degree of force which in the circumstances is neither likely nor intended to



EXHIBIT
Johnson
2
411 5123106

cause death or serious physical injury.

4. <u>Serious Physical Injury:</u> Serious physical injury is defined as any bodily injury which creates a substantial risk of death; causes serious, permanent disfigurement; or results in extended loss or impairment of the function of any bodily member or organ.

5. <u>Probable Cause:</u> Probable cause for arrest exists if, at the time of the arrest, the facts within the knowledge of the arresting officer (or within the collective knowledge of the police) are reasonably trustworthy and are sufficient to warrant a person of reasonable caution and prudence to believe that the person being arrested has committed or is committing the crime for which the arrest is being made.

6. <u>Reasonable Belief:</u> Reasonable belief exists when the facts or circumstances an officer knows, or should know, are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances.

7. <u>Defensive Force:</u> The necessary infliction of physical battery to overcome violent resistance or to protect others from assault or injury.

## POLICY

1. Members of this Department shall use only the force reasonably necessary to effect lawful objectives and effectively bring an incident under control.

2. Members of this Department may use deadly force only when the officer reasonably believes that the action is in defense of human life, including the officer's own life, or in defense of any person in immediate danger of serious physical injury, or to prevent the escape and effect the arrest of a fleeing felon whom the officer reasonably believes will pose a significant threat to human life should escape occur.

3. In each individual instance, lawful and proper force is restricted to only that force necessary to control and terminate unlawful resistance and to prevent any further physical attack against the police officers or any other person. This would include deadly and/or non-deadly force, with lethal and non-lethal weapons.

## CONTINUUM OF FORCE

The amount and degree of force which may be employed will be determined by the surrounding circumstances including, but not limited to:

page 3

a. The nature of the offense;

b. The behavior of the subject against whom force is to be used;

c. Actions by third parties who may be present;

d. Physical odds against the officer: and

e. The feasibility or availability of alternative actions.

When an officer determines that the use of force is necessary, he shall, to the extent possible, utilize the appropriate level of force as determined by the particular needs of the situation.

The preferred means of using force are set forth below in ascending order from least severe to the most drastic measures. An officer should exhaust every reasonable means of employing the minimum amount of force before escalating to a more severe application of force, except where the officer reasonably believes that lesser means would not be adequate in a particular situation and the use of force is necessary to accomplish his lawful objective or to protect himself or another from serious physical injury or death.

a. Verbalization is defined as verbal persuasion used by the officer in an attempt to defuse the situation or inform a suspect that he is under arrest.

b. Physical strength or hand control is the level of force normally required to overcome passive or defensive resistance that is not intended as an act of overt aggression toward the officer when an individual refuses to comply with verbal instructions.

c. Restraint techniques are those techniques an officer feels necessary to use to effect "Take Down and Control Holds" by using his hands or police baton.

d. Department approved non-lethal chemical substance when used to overcome resistance or an assault, or deter riotous or violent behavior.

e. The department approved police baton, when used as an impact instrument by the officer to defend himself or another from the threat of serious physical injury.

f. CNICS Gas Grenades and Projectiles when used in dispersing violent, riotous crowds or when dealing with armed or dangerous barricaded subjects.

g. The use of Deadly Force is the last option within the continuum of force and is only authorized in accordance with

page 4

<u>USE OF FORCE</u>                                    <u>SEPTEMBER 1, 1993</u>
        the guidelines in separate policy dealing with firearms.

### PARAMETERS FOR THE USE OF NON-DEADLY FORCE

The application of non-deadly force by a police officer in the
performance of his duty will generally be limited to defensive
situations where it is necessary;

        a. In self-defense, or defense of another, against unlawful
        violence or attach to his person or property; or

        b. To overcome resistance to arrests, to conduct searches and
        seizures, and to prevent escapes from custody; or

        c. To preserve the peace, prevent the commission of offenses,
        or prevent suicide or self-inflicted injury.

### PROCEDURES

1. Only issued or approved equipment will be carried on duty and
used when applying any level of non-deadly force.

2. Use of restraining devices is mandatory on all prisoners, unless
in the officer's judgment unusual circumstances exists which make
the use of restraining devices impossible or unnecessary (e.g.
prisoner is handicapped, etc.). The mere placing of handcuffs on a
prisoner will not be construed to be a use of physical force.

3. Inasmuch as handcuffs are required as part of separate prisoner
handling policy no report is required unless an injury or complaint
of injury results from the use of cuffs.

4. All officers through inservice training and all sworn personnel
prior to graduation from recruit training programs shall be issued
copies of and be instructed in the following policies regarding the
use of force:
        "Use of Force"
        "Use of Firearms"
        "Service Baton"
        "Aerosol Sprays (OC)"

5. A weapon should not be displayed or brandished as a threat
unless its actual use in the situation would be proper. This does
not prohibit an officer from having a weapon readied when it is
anticipated that a weapon may be required.

6. Officers shall not alter or modify a weapon without the written
permission of the Chief or his designee. Only weapons authorized by
the Chief may be used.

7. Officers shall be properly trained and instructed in the use of weapons such as batons and chemical substances before being authorized to carry such.

8. Chemical substances may be used when physical force is necessary and is covered under separate policy and procedure statement.

9. The baton may be used by an officer and is also covered under a separate policy and procedure statement.

10. After any level of non-deadly force is used, the officer shall immediately evaluate the need for medical attention or treatment for that person upon whom the force was used and arrange for such treatment when:

    a. That person has a visible injury; or,

    b. That person complains of injury or discomfort and requests medical attention.

11. Any person requesting and/or deemed in need of immediate medical attention shall be transported (in accordance with departmental transportation procedures) to the nearest available emergency treatment center of hospital. All medical treatment received shall be noted in the officer's report.

12. The officer shall promptly notify his immediate supervisor of the incident.

13. The officer shall attempt to locate and identify all witnesses, documenting their statements.

14. The officer shall prepare and submit all required reports. If more than one officer is involved in a use of force incident resulting in an injury, each officer shall complete a report outlining his actions and observations in the incident.

15. Each report shall contain the following information:

    a. Time, Date and Location of incident,

    b. The names and addresses of victims and witnesses,

    c. A detailed description of the circumstances that led up to and required the use of force,

    d. A detailed description of the actual use of force,

    e. The extent and on-scene treatment of injuries, if any,

    f. When applicable, the name of treatment facility, time of arrival and doctor administering treatment.

page 6
USE OF FORCE _____ SEPTEMBER 1, 1993

16. If available, the Patrol Supervisor shall immediately respond to the scene of any incident where, as the result of the application of physical force, an officer is injured, or a prisoner has a visible injury, or complains of injury or discomfort and requests medical attention, and he shall:

> a. Ensure that officers receive any necessary assistance, including medical treatment, and that any injuries to officers are properly documented.

> b. Ensure that the need for medical treatment for the prisoner is properly evaluated and provided.

> c. Determine if a detective should respond to the scene and the level of investigative services to be utilized (including photos, measurements and diagrams). If an injury or complaint of pain exists, supervisors are encouraged to obtain photographs. A photograph showing no injury may be as important as one which shows injury.

> d. File a report on the incident and his observations with the officer in charge of the police station.

17. In the event that an officer uses force which results in the death or serious physical injury of a person, his Unit Commander or Designee will forthwith notify the Director of the Stress Unit.

18. Pending administrative review, the officer will be removed from line assignment and immediately be assigned to the Office of the Chief and he will be directly supervised by the Stress Unit Director or his Designee. The Stress Unit Director or Designee will initiate supportive services for said officer and/or family members.

19. For every incident where an officer applies force through the use of a weapon, his report, which is required under Section 14, shall be reviewed by his Commanding Officer who shall forward the report together with his findings as to whether the incident violated this policy and procedure.

PER: *Edward P. Gardella*
EDWARD P. GARDELLA
CHIEF OF POLICE

EG:fl

# **<u>EXHIBIT G</u>**

# POLICY AND PROCEDURE NO. 500

| Internal Affairs Investigations | | | |
|---|---|---|---|
| Date Issued 04-22-99 | Date Effective 04-22-99 | Revision No. 1 | No. of Pages 5 |

## INTERNAL AFFAIRS

The function of the Internal Affairs Division is to protect the integrity of the Worcester Police Department, and its personnel both sworn and non-sworn.

It is the goal of the Citizen Complaint Procedure that the rights of all citizens be protected and that police officers be free to exercise their best judgment and to initiate action in a reasonable, lawful, impartial manner without fear of reprisal. A proper relationship between the police and the citizens of Worcester, fostered by trust and confidence, is essential to law enforcement.

This system of complaint and disciplinary procedure not only subjects officers to corrective action when acting improperly, but also protects them from unwarranted criticism when discharging their duties properly.

## WHO MAY COMPLAINT AND HOW:

Any citizen who feels that they have knowledge of police corruption or misconduct is encouraged to use the Worcester Police Department Citizen Complaint Procedure.

A complaint against any member of the Worcester Police Department, civilian or sworn, may be made by contacting the police department either in person or by phone. Citizen Complaint Forms are available in English, Spanish, and Vietnamese at the Service Division (lobby of the police station) the Offices of the City Manager and Mayor at City Hall, or by telephoning The Internal Affairs Division Directly, and shall be distributed to any member of the public upon request. No person, at any time, shall be refused such a complaint. The official-in-charge will be notified of the complaint, which will be forwarded to the Chief of Police or his designee who is responsible for internal investigations. Complaints received over the phone will be accepted, however, the complaint should then be reduced to written form and signed by the complaining party.

All complaints, upon receipt to the department, are to be forwarded to the Internal Affairs Division. Every complaint, regardless of its nature, is assigned for investigation. It shall be the responsibility of the Internal Affairs Division Commander to determine if the complaint

POLICY & PROCEDURE #500
INTERNAL AFFAIRS INVESTIGATIONS
APRIL 22, 1999

and the subsequent investigation is to be conducted by The Internal Affairs Division or to assign the complaints investigation to the commanding officer of the complained officer(s), since discipline is recognized as a function of **command**. The respective Commander shall complete the complaint investigation and submit their findings both to the Chief of Police and to the Internal Affairs Division. These findings shall correspond to the dispositions, Sustained, Not Sustained, Exonerated or Unfounded.

In the event that a citizen appears at police headquarters to file a citizen complaint and the official-in-charge of the officer alleged is on duty, that official-in-charge shall be immediately contacted to confer with the complainant. After consultation with the official-in-charge, the complainant may or may not elect to file the complaint.

## WHAT SHOULD BE REPORTED

Police behavior that should be subject to citizen complaints include, but are not limited to:

**Corruption such as:**
Theft
Bribery
Acceptance of gratuities, etc.

**Misconduct such as:**
Physical - verbal abuse
Unlawful arrest
Harassment
Possible criminal acts

## INVESTIGATION AND DISPOSITION

Citizen complaints are thoroughly investigated and a report is prepared which includes statements from the complainant, the accused, and may include written statements from all witnesses.

Sworn statements are not taken, first, because Police are not authorized to administer oaths, and, secondly to avoid the possibility of intimidating the complainant and or witnesses.

Every potential witness and complainant should be made to feel comfortable and to place them in a non-threatening environment. The interview with a witness should not be

2

POLICY & PROCEDURE #500
INTERNAL AFFAIRS INVESTIGATIONS
APRIL 22, 1999

implied to be a formal legal forum, which may discourage witnesses from speaking freely and truthfully.

The preferred form of an interview with a potential witness will be in person. The witness statement should be written on WPD IAD FORM W-1 4/99, if not taped.

The completed investigative report also includes a narrative summary of the events and a finding of facts as determined by the statements of those involved. The report is then given to the Chief of Police to review for completeness, objectivity and evaluation. If the Chief of Police has reason to believe that there was misconduct or corruption on the part of the employee, the Chief shall take whatever remedial action necessary.

The disposition of the complaints are classified as follows:

UNFOUNDED       :Incident did not occur or officer not involved.
EXONERATED     :Incident occurred but officer acted lawfully and proper.
NOT SUSTAINED:Insufficient evidence to prove or disprove the allegation.
SUSTAINED        :Allegation is supported by sufficient evidence.

In all cases, the officer as well as the complainant is notified of the disposition.

Effective this date the following shall be this Department's Policy and Procedure concerning citizen complaints of alleged misconduct by any department member. All superior officers who receive or initiate complaints against an employee for a violation shall strictly adhere to these internal procedures.

When a citizen appears at police headquarters to complain of alleged police misbehavior they shall first be referred to the complained of officer's official-in-charge if that official is on duty. If no official of that unit is available, the complainant shall be referred to the Internal Affairs Division during periods when that office if open and an investigator is available. In the event that the Internal Affairs Division is not open or if no investigator is available, the citizen shall be referred to the Official-in-charge of the Service Division. That official will provide the complainant with a copy of the citizen complaint form and allow the citizen to read and fill out the complaint form.

Refusal to file or sign a citizen's complaint form does not eliminate the requirement of an internal investigation. The receiving official shall review the completed form and ascertain whether the complaint is of a minor nature and written statements not required. If there is clear indication that the employee did nothing improper, the official may resolve the complaint. The general nature of the complaint and the official's action shall be forwarded via an IDC report through channels to the IAD. The report shall be attached to the completed citizen's complaint form. If the matter is not resolved, the IAD Commander shall initiate procedures for an investigation of the complaint.

POLICY & PROCEDURE #500
INTERNAL AFFAIRS INVESTIGATIONS
APRIL 22, 1999

Upon receipt of a citizen complaint, the Internal Affairs Division will record the receipt of the complaint, make a determination as to the identity of the complained of officer(s) and begin a case file according to procedure.    If the IAD Commander determines the complaint to be minor in nature, the commander will forward the complaint to the appropriate unit commander for full investigation.    The unit commander shall conduct a full and complete investigation into the allegation(s) and submit a report of his findings to the Internal Affairs Division.    The unit commander shall include in the investigatory report his determination as to the allegation(s) made in the citizen complaint on the basis of one of the following four classifications:

    A. Unfounded – the investigation indicates that the act or acts complained of did not occur or failed to involve police department personnel.
    B.  Exonerated – act(s) did occur but the actions of the officer were justified, lawful and proper.
    C.  Not Sustained – the investigation fails to discover sufficient evidence to clearly prove or disprove the allegations made in the complaint.
    D.  Sustained – the investigation disclosed sufficient evidence to clearly prove the allegations made in the complaint.

The complainant as well as the employee involved shall be notified of the disposition as soon as possible following the completion of the investigation.    Information of evidentiary nature which would prove prejudicial to either party in future court proceedings may not be lawfully disseminated without court order.

The Internal Affairs Division shall retain the complaint and conduct an investigation under one of more of the following conditions:
• The Chief or his designee so orders.
• The complained of officer(s) cannot be immediately identified.
• The nature of the complaint is such that limited circulation and or a heightened level of privacy; urgency or secrecy thereof is necessary.
• The complained of officers extend beyond more than one command.
• The nature of the complaint is such that the investigation calls for the extensive investigatory resources or expertise.

In this instance, the specific unit commander shall be kept notified as to the progression of the investigation.    Results of an investigation conducted by the IAD will be forwarded to the Chief of Police and the appropriate unit commander shall be made aware of the findings.

Upon the receipt of a completed commander's investigatory report, the Internal Affairs Division will forward this report along with any necessary supporting documentation to the Chief of Police.    The Chief, upon reviewing the investigatory report and recommended findings, will make the final determination either to accept the recommended finding or to remand the investigation back to the investigation commander. If the investigatory report

POLICY & PROCEDURE #500
INTERNAL AFFAIRS INVESTIGATIONS
APRIL 22, 1999

contains one or more sustained violations of departmental rules, regulations or procedures, the specific unit commander shall confer with the Chief of Police as to the appropriate mode of discipline. The unit commander is encouraged to review the accused officer's disciplinary record housed in the IAD when considering discipline. After obtaining authorization to implement discipline, the unit commander and his command staff shall administer the agreed upon level of sanction in accordance with this department's Rule and Regulation #130, "Discipline of Employees". The IAD shall be notified of any discipline imposed so that a record of its occurrence can be entered. Likewise, a record of any internally generated complaint and subsequent discipline shall be reported to the IAD for record keeping purposes.

Upon completion of the investigation, the Chief of Police will notify the employee(s) involved and the complainant(s) of his official determination.

EDWARD P. GARDELLA
Chief of Police

# EXHIBIT H

1                                        VOL. I
                                        Pp. 1 - 110

2                                        Exhibits:  None

3

4                      UNITED STATES DISTRICT COURT
               FOR THE CENTRAL DISTRICT OF MASSACHUSETTS

5                                C.A. NO.  05-40075FDS

6

7   * * * * * * * * * * * * * * * * * *

8   DANIEL HOUDE,

9         Plaintiff

10  VS.

11  ROBERT TURGEON, STEPHEN
      GUNNERSON, KEVIN JOHANSON,

12  MATTHEW D'ANDREA, BRIAN HALLORAN,
      THOMAS DUFFY, SEAN McCANN, AND

13  CITY OF WORCESTER,

14        Defendants

15  * * * * * * * * * * * * * * * * * *

16

17      Deposition of STEPHEN GUNNERSON, a witness

18  called by counsel for the Plaintiff, pursuant to the

19  applicable rules, before Lorreen Hollingsworth,

20  CSR/RPR, CSR NO. 114793, and Notary Public in and for

21  the Commonwealth of Massachusetts, at the Offices of

22  David Zirken, 20 Main Street, Natick, Massachusetts,

23  on Tuesday, May 23, 2006, at 11:55 a.m.

24

```
 1         Turgeon asking Mr. Houde to unlock the door

 2         and to show him his hands -- from that

 3         point forward, could you tell me everything

 4         that you observed in regards to Mr. Houde

 5         that evening?

 6    A    May I take a break?

 7              (A short break was taken.)

 8    Q    I think my question was:  Tell me what

 9         occurred or what you observed from the time

10         you arrived at the passenger side window of

11         Mr. Houde's vehicle until Mr. Houde was

12         taken into custody that evening or that

13         morning, I guess I should say.

14    A    All right.

15    Q    It's a bit of an open-ended question.  I

16         think you can --

17    A    It is.  That's okay.

18              I'm at the passenger side and

19         Officer Johanson enters the camper from,

20         like, a back door, like a backside door.

21         When he comes into the camper, the female

22         passenger decides she's leaving.  And I was

23         telling her, Keep your hands where I can

24         see them; stay in the vehicle.
```

1              She throws open the door, the

2      passenger door.  She hit me.  I get pushed

3      to the side a little bit, and she goes

4      bolting out of the camper, and I let her

5      go.

6              Officer Johanson is trying to

7      get Mr. Houde out of the driver's seat and

8      is telling him, you know, give us your --

9      show us your hands, give us your hands,

10     you're under arrest.  And I believe he

11     unlocks the door for Officer Turgeon

12     because the door is open.  So I come in,

13     start coming in the passenger side that the

14     female occupant has left open when she took

15     off.

16             Mr. Houde is holding onto the

17     steering wheel with, I don't know -- I

18     don't know if it was his left or his right

19     hand.  I know he's holding onto the

20     steering wheel with one or both of his

21     hands at one point.

22             And Officer Johanson is

23     telling him to let go of the steering

24     wheel; let go of the steering wheel.  And

1    he's not listening at all to anything

2    anyone's telling him.  We're all telling

3    him, Show us your hands; you're under

4    arrest; put your hands behind your back.

5                    So at some point Officer

6    Johanson is basically picking him up,

7    trying to pull him out of the front seat.

8    And I'm -- there's really no way for me to

9    get into this deal anyway.  So I'm just at

10    the passenger -- I'm, kind of, in between

11    the passenger seat and the dashboard, I

12    guess, facing the driver's seat.

13                    And as Officer Johanson is

14    trying to lift Mr. Houde out of the

15    driver's seat, Mr. Houde kicks me in the

16    chest, and I, kind of, got wedged in

17    between the windshield and the dashboard,

18    because it's a camper and there's quite a

19    bit of room in there.

20                    And then somehow -- and I

21    don't really see how it concludes, Kevin --

22    or Officer Johanson has Mr. Houde and is

23    bringing him to that back door of the

24    camper.

1            I'm, kind of, stuffed in

2   between the windshield and the dashboard.

3   I'm taking up the whole passenger side.

4            So they go down, kind of, the

5   aisle. They're going to the back of this

6   camper, anyway, to the back door. So I

7   start following them, but everyone gets

8   choked up at that back door. And I can't

9   see around Officer Johanson.

10            (Off the record)

11 A   So I can't get past or see past Officer

12   Johanson. They're at the backside door.

13            So at that time, I go back out

14   the front, the same way I came in. I go

15   all the way to the front of the camper and

16   out the passenger side.

17            When I come out of the camper,

18   Mr. Houde is on the ground outside the

19   camper. I don't know who else is with him

20   on the ground right then and there. I

21   go -- he's laying face down on the ground.

22            So I go to the right side of

23   Mr. Houde, and at that time I see that his

24   right arm is underneath his body and I

1    can't see his hand.  So, you know, I'm

2    telling him, you know, as other officers

3    are, Put your hands behind your back.  Put

4    your hands behind your back.  Give us your

5    hands; you're under arrest, trying to

6    verbalize what we want him to do.

7                And he's not listening.  So at

8    that time I'm, kind of, kneeling down.

9    I'm, kind of, up -- kind of, by his right

10   shoulder, I guess is the best way -- in

11   between his shoulder and his waist.  And

12   I'm on that right side of his body and with

13   my left hand, I'm trying to get his right

14   arm out from underneath his body.  And the

15   whole time I'm telling him, you know, Give

16   me your hand, put your hands behind your

17   back.  And he's not listening, and he's

18   laying on his arm, so I can't get his arm

19   out from underneath him.

20               So as this is going on, I

21   don't know really what else was going on

22   around me, I'm just trying to get this

23   right hand out from underneath his body.

24               Then, at that time, I hear a

1    growl on my -- on the right side of me,

2    kind of, just right off to the side of my

3    head.

4                    And Mr. Houde starts

5    screaming, Get him, sic him.  And he's

6    saying the name, but I don't know -- I have

7    no recollection whatsoever of the name.

8                    But I'm hearing this growling,

9    and I look to my right and there's a dog

10   right at -- right at my head because I'm

11   down on the ground with Mr. Houde.  So I'm

12   pretty low to the ground.  I'm not standing

13   up.  Obviously I wouldn't be able to get to

14   his arm.

15                    The dog is growling in my ear.

16   And the dog is, kind of, hunching down, and

17   very aggressive, his ears back, just as

18   you -- you know, if you've ever seen a dog

19   when they're mad, they have a very

20   distinctive posture.  And he's screaming

21   for the dog, Get him, sic him.  So I look·

22   at the dog and I start yelling for someone

23   to get the dog, get the dog out of here,

24   get the dog.

86

1          As this is going on, my

2     attention is, kind of, now diverted away

3     from Mr. Houde onto this dog because I'm

4     afraid the dog is going to bite me.

5          Mr. Houde is grabbing onto my

6     left arm now with his right arm underneath

7     his body.  I had my left arm underneath him

8     trying to pull his arm out.  He's pulling

9     on my right arm.  He starts growling,

10    almost exactly like the dog.

11          So I look over at Mr. Houde.

12    As I'm screaming for someone to get the

13    dog, I look over to Mr. Houde, and he's

14    trying to bite my left arm, as he's

15    growling.  The dog is growling more.  And

16    between the two of them, I don't know who's

17    growling louder.

18          He's trying to bite my left

19    arm.  I'm afraid the dog is going to bite

20    me in the neck.  And I just want to get out

21    of there.

22          At this point, I'm afraid I'm

23    either going to get bit by either

24    Mr. Houde, the dog, or both.  So I'm

1    yelling to the guys, He's trying to bite

2    me.

3              I don't know if they

4    understood I meant the dog or him, but

5    that's what I yelled, He's trying to bite

6    me.  And I'm trying to pull away from him,

7    Mr. Houde.  But he's got my arm pinned now

8    between him and the ground, and the dog is

9    still on the ground.

10              And at that time I hit

11    Mr. Houde with a closed-fist impact, trying

12    to get him from biting my arm and getting

13    away from him and the dog because I'm still

14    trapped between him and the dog.

15              And that has no effect on him.

16    He doesn't budge.  He's still growling,

17    trying to get my arm.  The dog is on my

18    right side, growling.  So I hit him again,

19    second time.  First time didn't stop him --

20    didn't stop him from trying to bite me, and

21    I couldn't extricate myself to get my arm

22    free, and so I hit him a second time.  And

23    it stunned him.

24              And I have that half a second

88

```
 1           where he's not doing anything; he's just,
 2           kind of, dazed for a second, and I reach my
 3           left arm out of the way and I got out of
 4           there and just got, like, 5 feet away from
 5           this whole deal.
 6                     At that point, someone yells
 7           Spray, which I know to be pepper spray, and
 8           he gets sprayed and he gets handcuffed.
 9           And that's pretty much the end of it.
10    Q      Okay.  Well, what kind of a dog was it?
11    A      I don't know.  I don't think -- I don't
12           really recall exactly what kind of dog.  I
13           don't think it was a pure bred, but I don't
14           know.
15    Q      Chihuahua?
16    A      It was bigger than a Chihuahua, big enough.
17           It was a pretty big dog.
18    Q      But you can't remember what kind of dog?
19    A      No, I just saw teeth.
20    Q      And as you were having this struggle with
21           Mr. Houde, was someone holding Mr. Houde
22           down?
23    A      I have -- I don't believe so, but -- my
24           attention at this point is on Mr. Houde
```