UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF MASSACHUSETTS

_____
                                    )
DANIEL HOUDE,                       )
                                    )
   Plaintiff,                   )
                                    )
v.                                  ) C.A. NO. 05-40075FDS
                                    )
ROBERT TURGEON, STEPHEN GUNNERSON,  )
KEVIN JOHANSON, MATTHEW D'ANDREA,   )
BRIAN HALLORAN, THOMAS DUFFY,       )
SEAN MCCANN and CITY OF WORCESTER   )
                                    )
                                    )
   Defendants.                  )
_____)

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT
OF UNDISPUTED FACTS AND STATEMENT OF
<u>ADDITIONAL FACTS PRECLUDING SUMMARY JUDGMENT</u>**

**I. Response To Defendants' Statement of Undisputed Facts**

  1. Denied as set forth in Section II, below, except admitted that the vehicle had different license plates.

  2. Denied as set forth in Section II, below.

  3. Denied as set forth in Section II, below, as plaintiff contends his vehicle was already in the parking lot.

  4. Admitted.

  5. Admitted.

  6. Admitted.

  7. Admitted.

8. Admitted that the police report so states and that Plaintiff pled guilty to the relevant charges.

9. Denied as set forth in Section II, below.

10. Denied as set forth in Section II, below.

11. Admitted.

12. Admitted.

13. Admitted that the plea was taken with the advice of counsel, but denied as otherwise stated.

## II. Plaintiff's Statement of Additional Facts Precluding Summary Judgment

### A. Background

1. Daniel Houde ("Mr. Houde") graduated from Grafton High School in 1982. See deposition of Daniel Houde ("Houde Depo"), at p.7 attached hereto as **Exhibit 1**.

2. Immediately thereafter, Mr. Houde began work for a water purification company and worked there for seven (7) years. Id., at p. 9-11 attached hereto as **Exhibit 2**.

3. Mr. Houde then worked for Marriott Corporation as a facility and equipment supervisor for another seven (7) years. Id.

4. Mr. Houde then began his own food service business called "Fun Times Food Festival." Id.

5. Eventually, Mr Houde's business grew and he bought four mobile food service trucks. Id., at p. 14 attached hereto as **Exhibit 3**.

6. Mr. Houde's trucks mainly serviced nightclubs and concert venues in Worcester. Id., at p. 16 attached hereto as **Exhibit 4**.

B.Motives for Animosity Between Plaintiff and the Worcester Police

7.At one point the owners of the Palladium in Worcester approached Mr. Houde and asked him to run and manage a pizza parlor on their property. Id., at p. 45-50 attached hereto as **Exhibit 5**.

8.After a few weeks, the Palladium owners abruptly advised Mr. Houde that the deal was off. Id., at p. 51 attached hereto as **Exhibit 6**.

9.Thereafter, the Palladium owners did not want Mr. Houde parking his food service trucks near their establishment or to compete with their pizza business. Id., at p. 54 attached hereto as **Exhibit 7**.

10.Several police officers in Worcester performed off-duty detail work for the Palladium. See Deposition of Stephen Gunnerson, p. 34-35 attached hereto as **Exhibit 24** and Deposition of Kevin Johanson, p. 48-49 attached hereto on **Exhibit 25**. Animosity between Plaintiff and the Palladium ensued and the owners actively interfered with Mr. Houde's attempt to park near the Palladium and sell his goods. Deposition of Daniel Houde, p. 55 attached hereto as **Exhibit 8**.

11.At the same time, Mr. Houde began experiencing problems with certain members of the Worcester Police Department. Id., at p. 66 attached hereto as **Exhibit 9**. Among other things, the police would shut his food truck down on some nights and often contended that he was violating parking ordinances when he was not. Id.

12.Worse, Mr. Houde's trucks started to get pulled over in Worcester without cause. Id., at p. 67 attached hereto as **Exhibit 10**. This occurred 10-12 times. Id., at p. 92 attached hereto as **Exhibit 11**.

13. Mr. Houde soon discovered that the father of a Worcester Police officer owned a competing food service truck, "Munch Times." Id., at p. 102 attached hereto as **Exhibit 12**.

14. Defendants admit that they knew that the father of one of their co-workers was so employed. See Deposition of Kevin Johnson, p. 53-54 attached hereto as **Exhibit 26** and Deposition of Stephen Gunnerson, p. 42-43 attached hereto as **Exhibit 27**.

15. At one point, Mr. Houde was admonished by certain police officers in Worcester to pack up his business and get out of the city. Houde Depo., p. 113 attached hereto as **Exhibit 14**.

16. During this same time period, Defendant Robert Turgeon admits that he began staking out Mr. Houde's home. See Deposition Transcript of Robert Turgeon at p. 25-31 attached hereto as **Exhibit 15**. Turgeon's mother lived on the same street as Plaintiff; which happened to be on Turgeon's patrol route. Turgeon admits that he began investigating Houde based on his mother's concerns. Id. Incredibly, Turgeon then began, without the instruction of his superiors, to stake out Plaintiff's home and would occasionally make vehicle stops of people leaving Mr. Houde's house. See Deposition of Robert Turgeon, p. 37-38 and 42 attached hereto as **Exhibit 29**. Yet, Turgeon never found grounds to arrest Plaintiff prior to May 20, 2002. Id.

C. <u>The Incident on May 20, 2002</u>

17. On May 20, 2002, Mr. Houde went to a local establishment on Grafton Street with a friend Renee Rudy. Houde Depo., p. 121-122 attached hereto as **Exhibit 16**.

18. Mr. Houde left the establishment to go to Walsh's fabrication shop, about 200 yards away on Grafton Street. Id., at p. 129.

19. Mr. Houde pulled to the loading dock at Walsh's shop. Id., at p. 130 attached hereto as **Exhibit 18**.

20. Suddenly, several police cruisers pulled in behind him. Id.

21. Officer Turgeon appeared at Mr. Houde's door and demanded he open it. Turgeon states that Officers Gunnerson and Johanson then arrived to assist. Turgeon states that Johanson was with him on the driver's side while Gunnerson went to the passenger side. At this point, the officers considered Houde to be under arrest. Johanson then went to the rear door of the camper, entered the vehicle, and attempted to physically remove Houde from the vehicle. The officers state that during this incident, Mr. Houde flailed; striking officer Turgeon and Johnanson with his fist and kicking officer Gunnerson in the chest. See Deposition of Turgeon, p. 72-85 attached hereto as **Exhibit 19**. During this exchange, Houde never wielded a weapon. See Deposition of Johanson, p. 84 attached hereto as **Exhibit 30**. The officers did not receive medical treatment for their injuries. Id., p. 73 attached hereto as **Exhibit 31**.

22. After this initial struggle, Johanson and Gunnerson dragged Houde to the back of the camper. See Deposition of Robert Turgeon, p. 87 attached hereto as **Exhibit 32**. Houde then stumbled out of the vehicle and fell to the ground. Id., p. 93 attached hereto as **Exhibit 33**. By this time other officers, including Brian Halloran, had arrived and Halloran grabbed Houde around the legs to prevent escape. Id., p. 96 attached hereto as **Exhibit 34**. At least Johanson, Gunnerson, Halloran, and Turgeon all physically held Houde on the ground during the struggle. Deposition of Robert Turgeon, p. 96 attached hereto as **Exhibit 38**. Officer Duffy ultimately used pepper spray on Houde while he was held by these Defendants. Id., p. 99 attached hereto as **Exhibit 39**.

23. Once the officers gained complete control of the situation, they began to mercilessly beat Houde. One officer (Johanson) held him up by the back door of the vehicle while a second officer beat him in the stomach and chest. See Deposition of Houde, p. 144-146 attached hereto as **Exhibit 35**. Mr. Houde then lost consciousness and awoke about 50 feet away, bleeding profusely from his face and legs. Id., p. 151 attached hereto as **Exhibit 36**. The officers continued to beat him until another officer used pepper spray on him. Id., p. 152 attached hereto as **Exhibit 37**. Finally, another police officer arrived, saying "What are all my cruisers doing down here" and then ordered the officers to get off of Mr. Houde. Id.

24. Mr. Houde sustained various serious injuries from the incident which are consistent with his version of events. See Medical Records attached hereto as **Exhibit 20**.

25. Photographs showing Mr. Houde's injuries are attached hereto as **Exhibit 21.**

26. When Mr. Houde was taken to the police station for booking, a booking officer took one look at him and stated "What the heck are you guys doing? Get this guy to the hospital." See Houde Depo., p. 159 attached hereto as **Exhibit 22**.

27. The next day, when Mr. Houde was taken to Court for arraignment, the presiding judge refused to arraign him due to his condition and sent Mr. Houde back to the hospital for further evaluation. Id., p. 177 attached hereto as **Exhibit 23**.

   D.   The Officers Inconsistencies and Cover-Up

28. Turgeon and Gunnerson failed to report that they had hit Houde with closed fists when they filed their report in this matter. Nonetheless, when faced with the photographic evidence and medical records in this suit, both have admitted striking Houde with closed fists and have invented wild stories to support their actions. Turgeon claims he punched

Houde in the back to get him to comply with the arrest. See Turgeon Depo., p. 101-102 attached hereto as **Exhibit 40**. Gunnerson's story is more bizarre. He claims that he was forced to punch Houde in the face because Houde's dog was threatening to bite him. Gunnerson Depo., p. 83-88 attached hereto as **Exhibit 41**. Contrary to Gunnerson's assertions Officer D'Andrea admitted at his deposition that, to the extent that there was a dog at the scene, he stood between Gunnerson and the dog and the dog was never closer that five feet to Gunnerson. D'Andrea Depo., p. 34-37 attached hereto as **Exhibit 42**.

      29.    It is a policy of the Worcester Police Department that the officers must report any use of force where someone in Houde's position is injured. D'Andrea Depo., p. 42 attached hereto as **Exhibit 43**. All of the officers failed to abide this policy by failing to report Houde's injuries that resulted from Gunnerson's and Turgeon's beating of Houde.

    E.    <u>Failure To Train and Supervise</u>

      30.    John Lewis was the supervisor of the Defendants in this case on the night of the incident. Lewis Depo., p. 52 attached hereto as **Exhibit 44**. It was Lewis' job to ensure that the patrolmen understood the department's policies and procedures and followed those policies and procedures. Id.

      31.    Nonetheless, Lewis was unable to state the City's use of force policy as of the date he began employment ("I - - I couldn't –you know, I don't know 100 percent") Lewis Depo., p. 31 attached hereto as **Exhibit 45**. Lewis also does not know the entire policy at present. Id., p. 31-32 attached hereto as **Exhibit 46**. Lewis simply looks a the policy when he needs to. Id. Finally, Lewis admitted that the could not remember any training regarding striking a suspect in the face. Lewis Depo., p. 42-44 attached hereto as **Exhibit 47**. Had there

7

been such a policy, and it was properly administered and enforced, Houde would not have suffered his injuries.

                                                Respectfully submitted,

                                                Daniel Houde

                                                By his attorneys,

                                                /s/ Timothy J. Perry
                                                Timothy J. Perry (BBO#631397)
                                                Gregory T. Donoghue (BBO#661480)
                                                PRETI FLAHERTY BELIVEAU & PACHIOS LLP
                                                10 High Street, Suite 502
                                                Boston, MA  02110
                                                TEL (617) 226-3800
                                                FAX (617) 226-3801

## CERTIFICATE OF SERVICE

     I hereby certify that on this date a true copy of the above document was served upon counsel of record, listed below, vie the Court's ECF system and by pre-paid First Class, United States Mail.

Dated: March 23, 2007                          /s/ Timothy J. Perry
                                                         Timothy J. Perry