UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF MASSACHUSETTS

C.A. NO. 05-40075FDS

| | |
|---|---|
| DANIEL HOUDE, | ) |
| Plaintiff, | ) |
| v. | ) |
| ROBERT TURGEON, STEPHEN GUNNERSON, KEVIN JOHANSON, MATTHEW D'ANDREA, BRIAN HALLORAN, THOMAS DUFFY, SEAN MCCANN and CITY OF WORCESTER | ) |
| Defendants. | ) |

**PLAINTIFF'S PRE-TRIAL MEMORANDUM**

Plaintiff Daniel Houde hereby submits his pre-trial memorandum pursuant to the procedural order dated November 27, 2007.

**(1)     Concise Summary of the Evidence to be Offered By Plaintiff**

A.     Plaintiff's Background

Daniel Houde ("Mr. Houde") graduated from Grafton High School in 1982. Immediately thereafter, Mr. Houde began work for a water purification company and worked there for seven (7) years. Mr. Houde then worked for Marriott Corporation as a facility and equipment supervisor for another seven (7) years. Mr. Houde then began his own food service business called "Fun Times Food Festival." Eventually, Mr Houde's business grew and he bought four mobile food service trucks. Mr. Houde's trucks mainly serviced nightclubs and concert venues in Worcester.

B.     Motives for Animosity Between Plaintiff and the Worcester Police

At one point the owners of the Palladium in Worcester approached Mr. Houde and asked him to run and manage a pizza parlor on their property. After a few weeks, the Palladium owners abruptly advised Mr. Houde that the deal was off. Thereafter, the Palladium owners did not want Mr. Houde parking his food service trucks near their establishment or to compete with their pizza business. Several police officers in Worcester performed off-duty detail work for the Palladium. Animosity between Plaintiff and the Palladium ensued and the owners actively interfered with Mr. Houde's attempt to park near the Palladium and sell his goods.

At the same time, Mr. Houde began experiencing problems with certain members of the Worcester Police Department. Among other things, the police would shut his food truck down on some nights and often contended that he was violating parking ordinances when he was not. Worse, Mr. Houde's trucks started to get pulled over in Worcester without cause. This occurred 10-12 times. Mr. Houde soon discovered that the father of a Worcester Police officer owned a competing food service truck, "Munch Times." Defendants admit that they knew that the father of one of their co-workers was so employed. At one point, Mr. Houde was admonished by certain police officers in Worcester to pack up his business and get out of the city.

During this same time period, Defendant Robert Turgeon admits that he began staking out Mr. Houde's home. Turgeon's mother lived on the same street as Plaintiff; which happened to be in the sector of the city in which Turgeon patrolled. Turgeon admits that he began independently investigating Houde based on his mother's concerns. Incredibly, Turgeon then began, without the instruction of his superiors, to stake out Plaintiff's home and would occasionally make vehicle stops of people leaving Mr.

2

Houde's house. Yet, Turgeon never found grounds to arrest Plaintiff prior to May 20, 2002.

C. The Incident on May 20, 2002

On May 20, 2002, Mr. Houde went to a local establishment on Grafton Street with a friend Renee Rudy. Mr. Houde left the establishment to go to Walsh's fabrication shop, about 200 yards away on Grafton Street. Mr. Houde pulled to the loading dock at Walsh's shop. Suddenly, several police cruisers pulled in behind him. Id.

Officer Turgeon appeared at Mr. Houde's door and demanded he open it. Turgeon states that Officers Gunnerson and Johanson then arrived to assist. Turgeon states that Johanson was with him on the driver's side while Gunnerson went to the passenger side. At this point, the officers considered Houde to be under arrest. Johanson then went to the rear door of the camper, entered the vehicle, and attempted to physically remove Houde from the vehicle. The officers state that during this incident, Mr. Houde flailed; striking officer Turgeon and Johnanson with his fist and kicking officer Gunnerson in the chest. During this exchange, Houde never wielded a weapon. The officers did not receive medical treatment for their injuries.

After this initial struggle, Johanson and Gunnerson dragged Houde to the back of the camper. Houde then stumbled out of the vehicle and fell to the ground. By this time other officers, including Brian Halloran, had arrived and Halloran grabbed Houde around the legs to prevent escape. At least Johanson, Gunnerson, Halloran, and Turgeon all physically held Houde on the ground during the struggle. Officer Duffy ultimately used pepper spray on Houde while he was held by these Defendants.

3

Once the officers gained complete control of the situation, they began to mercilessly beat Houde. One officer (Johanson) held him up by the back door of the vehicle while a second officer beat him in the stomach and chest. Mr. Houde then lost consciousness and awoke about 50 feet away, bleeding profusely from his face and legs. The officers continued to beat him until another officer used pepper spray on him. Finally, another police officer arrived, saying "What are all my cruisers doing down here" and then ordered the officers to get off of Mr. Houde.

Mr. Houde sustained various serious injuries (including broken bones and lacerations) from the incident which are consistent with his version of events. Contemporaneous photographs also show Mr. Houde's injuries and are consistent with his claim of excessive use of force. When Mr. Houde was taken to the police station for booking, a booking officer took one look at him and stated "What the heck are you guys doing? Get this guy to the hospital." The next day, when Mr. Houde was taken to Court for arraignment, the presiding judge refused to arraign him due to his condition and sent Mr. Houde back to the hospital for further evaluation.

D.   The Officers' Inconsistencies and Cover-Up

Turgeon and Gunnerson failed to report that they had hit Houde with closed fists when they filed their report in this matter. Nonetheless, when faced with the photographic evidence and medical records in this suit, both have admitted striking Houde with closed fists and have invented wild stories to support their actions. Turgeon claims he punched Houde in the back to get him to comply with the arrest. Gunnerson's story is more bizarre. He claims that he was forced to punch Houde in the face because Houde's dog was threatening to bite him. Contrary to Gunnerson's assertions Officer

4

D'Andrea admitted at his deposition that, to the extent that there was a dog at the scene, he stood between Gunnerson and the dog and the dog was never closer that five feet to Gunnerson. It is a policy of the Worcester Police Department that the officers must report any use of force where someone in Houde's position is injured. All of the officers failed to abide this policy by failing to report Houde's injuries that resulted from Gunnerson's and Turgeon's beating of Houde.

**(2)   Statement of Facts Established By The Pleadings**

1. Plaintiff Daniel Houde ("Mr. Houde") is a citizen of the United States of America and formerly resided at 121 Worcester Street, North Grafton, Massachusetts.

2. Defendant Robert Turgeon ("Officer Turgeon") is a citizen of the United States of America and, at all times relevant to this Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

3. Defendant Stephen Gunnerson ("Officer Gunnerson") is a citizen of the United States of America and, at all times relevant to this Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

4. Defendant Kevin Johanson ("Officer Johanson") is a citizen of the United States of America and, at all times relevant to this Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

5. Defendant Matthew D'Andrea ("Officer D'Andrea") is a citizen of the United States of America and, at all times relevant to this Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

6. Upon information and belief, Defendant Brian Halloran ("Officer Halloran") is a citizen of the United States of America and, at all times relevant to this

Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

7. Defendant Thomas Duffy ("Officer Duffy") is a citizen of the United States of America and, at all times relevant to this Complaint, was a member of the City of Worcester Police Department located in Worcester, Massachusetts.

8. Mr. Houde was formerly a resident, property owner and businessman in the City of Worcester.

9. In or around 1998, Mr. Houde began a mobile food kitchen business which conducted business under the trade name "Mr. Funtimes".

10. The business focused on the sale of hot dogs and other fast food items outside of popular local venues such as the Palladium and Atrium in Worcester, Massachusetts.

11. The mobile food kitchen business was successful and became a locally well-known and popular pre- and post-event venue.

12. Mr. Houde's business was doing so well that the owners of the Palladium, Jack Fisher and John Souza, took particular note of Mr. Houde's operation.

13. Eventually, Mr. Fisher and Mr. Souza offered Mr. Houde a business deal in which they agreed to renovate the first floor of the Palladium into a pizza shop and Mr. Houde agreed to manage the pizza shop. As part of this deal, Mr. Houde agreed to remove his food trucks from the street near the Palladium.

14. Mr. Houde spent several weeks assisting in the renovation of the pizza shop and prepared to run the shop for the Palladium.

15. Once renovations began, however, Mr. Fisher and Mr. Souza announced to Mr. Houde that a new ownership group was involved with the Palladium and that Mr. Houde's services would no longer be needed.

16. Mr. Houde went back to the mobile food kitchen business. Indeed, Mr. Houde purchased two additional mobile food trucks and hired additional drivers to man those trucks.

17. At times relevant to the allegations in this Complaint, the Palladium and two other night clubs owned by Mr. Fisher and Mr. Souza employed on-duty and off-duty officers of the Worcester Police Department.

18. Shortly after the deal with the Palladium fell through, Mr. Houde was back operating his mobile food trucks outside the Palladium.

19. Mr. Houde's after-hours food business fared much better than the pizza business in the Palladium.

20. Throngs of persons leaving the Palladium would line up at Mr. Houde's mobile food truck, while the Palladium's pizza business suffered.

21. The operators of the Palladium's pizza store grew agitated with Mr. Houde and often confronted Mr. Houde outside their shop.

22. During this time period, Mr. Houde also became aware that the father of a Worcester Police Officer owned a hot dog truck called "Munchtimes" that competed with Mr. Houde's trucks at Worcester events. This man often confronted Mr. Houde at Worcester events and jockeyed with Mr. Houde for positions outside of them.

23. In the spring of 2002, Steven Walsh, the owner of a fabrication shop in Worcester who did work on Mr. Houde's vehicles, advised Mr. Houde that: "The 'henchmen' are after you."

24. On the evening of May 20, 2002, Mr. Houde was out with an acquaintance, Renee Rudy.

25. On that night, Mr. Walsh who worked late at the fabrication shop, telephoned Mr. Houde and told him to bring his truck to the fabrication shop on Grafton Street for work Mr. Houde had requested. It was not unusual for this shop to commence work during such late hours.

26. Mr. Houde and Ms. Rudy exited the establishment they were at and entered his vehicle – a camper that was to be converted to a mobile food truck by the fabricator.

27. Mr. Houde then drove about two hundred yards to where the fabrication shop is located and pulled up to the fabricator's loading dock in its back parking lot.

28. Suddenly, several Worcester police cruisers surrounded Mr. Houde's vehicle.

**(3) Contested Issues of Fact**

Whether the beating administered by the Worcester Police on May 20, 2002 was undertaken because these officers were in fear for their life or whether that beating constitutes excessive use of force under relevant law.

**(4) Jurisdictional Questions**

None.

**(5) Questions Raised By Pending Motions**

8

None pending.

**(6)    Issues of Law**

None pending.

**(7)    Requested Amendments to the Pleadings**

None.

**(8)    Additional Matters To Aid Disposition of the Action**

Plaintiff is amenable to an additional mediation day if such a date does not extend the present trial date.

**(9)    Probable Length of Trial**

Approximately 2 weeks.

**(10)   Names of Witnesses**

(a)    Daniel Houde shall testify as to all allegations in the complaint as well as damages including emotional distress.

(b)    All Defendants shall be called to testify regarding the allegations in the complaint as well as the inconsistencies in their statements at deposition.

(c)    Renee Rudy shall be called to testify regarding the events of May 20, 2002 as she was a witness to part of the events of that evening. Her present address is unknown.

(d)    All physicians and medical providers identified in the medical records of Mr. Houde from the week of May 20, 2002 regarding their treatment of Mr. Houde.

(e)    David Zirlen, 20 Main Street, Natick, Massachusetts may be called to testify regarding Mr. Houde's claim of harassment by members of the Worcester Police prior to May 20, 2002.

  (f) Mark Macero, Worcester County Probation Department, Worcester, Massachusetts may be called to testify regarding Mr. Houde's claim of harassment by members of the Worcester Police prior to May 20, 2002.

  (g) Robert Farrell, regarding the competing snack food business alleged in the Complaint. Address currently unknown.

  (h) Witnesses on Defendants' Witness List.

  (i) Rebuttal Witnesses as necessary.

**(11) Exhibits[1]**

  (1) Worcester Police Reports and Records regarding the incident on May 20, 2002.

  (2) Worcester Police Manual with policies and procedures.

  (3) Mr. Houde's Medical Records and Invoices from the week of May 20, 2002.

  (4) Photographs showing injuries to Daniel Houde from the week of May 20, 2002.

  (5) Excerpts from personnel files of the Defendant officers.

---

[1] Plaintiff's counsel sought to confer with Defendant's counsel in order to submit a joint pre-trial memorandum in mid-December 2007. One of the items to be discussed was an agreement on exhibits. Defense counsel has not responded as of the date of this memorandum. In any event, since there is no question of authenticity, relevance or admissibility as to any of the exhibits on Plaintiff's list, it is expected that these exhibits shall be uncontested.

Respectfully submitted,

**PLAINTIFF DANIEL HOUDE,**

By his attorney,

/s/ Timothy J. Perry
Timothy J. Perry (BBO #631397)
PERRY, KRUMSIEK & JACK LLP
One McKinley Square
Boston, MA  02109
(617) 720-4300
facsimile (617) 720-4310

### Certificate Regarding Service

I hereby certify that this document was served upon all counsel of record by the Court's ECF system.

Date:  December 28, 2007                    /s/ Timothy J. Perry
                                            Timothy J. Perry