UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
DANIEL HOUDE,                          )
    Plaintiff                          )
                                       )
v.                                     )   C.A. NO. 05-40075FDS
                                       )
ROBERT TURGEON, STEPHEN                )
GUNNERSON, KEVIN JOHANSON,              )
MATTHEW D'ANDREA, BRIAN                 )
HALLORAN, THOMAS DUFFY, SEAN           )
MCCANN and CITY OF WORCESTER           )
    Defendants                         )
                                       )

PRETRIAL MEMORANDUM OF DEFENDANTS ROBERT TURGEON,
STEPHEN GUNNERSON, KEVIN JOHANSON, MATTHEW D'ANDREA,
BRIAN HALLORAN, THOMAS C. DUFFY
AND CITY OF WORCESTER

Defendants Robert Turgeon, Stephen Gunnerson, Kevin Johanson, Matthew D'Andrea, Brian Halloran, Thomas C. Duffy and City of Worcester hereby provide, pursuant to this Court's order of November 27, 2007, their pretrial memorandum.[1]

**PLAINTIFF'S COMPLAINT**

Plaintiff filed the present action in May 2005 for claims arising out of his arrest on May 20, 2002. The

---

[1] Contrary to Plaintiff's counsel's inference in footnote 1 of Plaintiff's Pretrial Memorandum, counsel for Defendants did attempt to confer in order to prepare a joint pretrial memorandum, and, in fact, sent two emails and left a voicemail for Plaintiff's counsel but did not receive a reply. It appears that Plaintiff's counsel may have changed firms and/or firm names, as well as changed his email address, and, therefore, may not have received the emails and/or voicemail. Defendants are confident that the vast majority of exhibits in this case can be agreed upon by the parties, and a supplemental joint exhibit list will be submitted separately.

counts of Plaintiff's Complaint that survived summary judgment are as follows:

I: Conspiracy among the individual defendants to violate 42 U.S.C. § 1983 by using excessive force;

II: Intentional infliction of emotional distress against all of the individual defendants; and

VI: Assault and battery against all of the individual defendants.

**SUMMARY OF THE EVIDENCE TO BE OFFERED BY DEFENDANTS**

On May 20, 2002, at approximately 12:43 a.m., Officer Robert Turgeon attempted to pull over Plaintiff Daniel Houde's camper on Grafton Street in Worcester, Massachusetts for having non-matching plates on the front and back of the vehicle.  Houde claims that he did not notice Officer Turgeon's emergency flashing lights and was not aware that a police officer was attempting to pull him over.  It is undisputed that Houde pulled the camper off of Grafton Street into the rear parking lot area of Frank's Flower Shop, which was dark and isolated at this hour of the morning.  Because Houde did not pull his vehicle over on Grafton Street and because Houde, instead, pulled into a dark and isolated area, Officer Turgeon called out for backup.  Officer Turgeon followed Houde's vehicle into the parking lot and approached the driver's side door, instructing Houde to roll down the window and provide his

2

license and registration. At this time, approximately, Officers Gunnerson and Johanson arrived to assist Officer Turgeon.

Officer Johanson and Gunnerson approached the passenger's side door of the camper where a female was seated. Both the passenger and Houde locked their doors, kept their windows rolled up, and Houde refused to provide his license and registration. In response to Houde's actions and fearing for his safety as well as his fellow officers, Officer Turgeon repeatedly ordered Houde to unlock the door and get out of the vehicle, which Houde refused to do. Instead, Houde kept his hands in his waist area in an apparent attempt to hide something and/or reach for something.

In the meantime, Officer Johanson entered the camper from the rear door, which was unlocked. Officer Johanson went through the camper to the front where Houde was seated and unlocked the driver's side door in order to allow Officer Turgeon to enter the vehicle to assist in arresting Houde. Houde gripped the steering wheel with his right hand, refusing to let go, while keeping his left hand closed. Officer Johanson repeatedly pulled on Houde from behind, trying to get him to release his grip on the steering wheel. At the same time, the female passenger

swung open the passenger's door, striking Officer Gunnerson, and she fled on foot. Because Houde posed more of an immediate risk of harm to his fellow officers than the female passenger, Officer Gunnerson chose to enter the camper to assist Officers Johanson and Turgeon rather than chase the female. When Gunnerson climbed into the passenger seat area, Houde managed to kick him in the chest, pushing Gunnerson into the windshield and dashboard.

Once the officers were able to break Houde's grip on the steering wheel, Houde lashed out at the officers. Houde was swinging his arms and struggling to break free. During this time, the officers repeatedly told Houde to stop resisting and to put his hands behind his back, which Houde refused to do. Houde punched Officer Turgeon in the ribs and punched Officer Johanson in the neck area during the struggle. Officer Johanson pulled Houde through the camper to the rear door because it was logistically impossible to remove Houde from the vehicle from the front doors where the seats obstructed the doorways.

While the struggle was ongoing in the camper, other officers were able to hear static/noise coming from the officers portable radios, which is an indicator that an officer is involved in a struggle and likely in need of assistance. Consequently, several other officers arrived

4

on the scene to assist, including Officers Halloran, D'Andrea, Duffy and McCann. Several of the officers, at varying times, went to the rear of the camper to assist Officer Johanson in removing Houde from the vehicle. When Officer Johanson finally reached the rear camper door, Houde was still struggling, flailing his arms, trying to grab at Officer Johanson, and kicking his legs. Houde was able to break away from Officer Johanson and he attempted to jump out the rear door over Officer Halloran who was standing in the doorway. Officer Halloran grabbed Houde's legs as Houde was attempting to leap over him, and they both fell backwards to the ground.

Once on the ground, several officers assisted in trying to grab Houde's hands in order to handcuff him and in trying to hold down Houde's legs to stop him from kicking. Houde continued to resist and he held his hands underneath his body to avoid being handcuffed. At this time, Officer Gunnerson, who was on the ground next to Houde's head and neck area, noticed a dog near the fray. Houde was calling out to the dog and trying to incite the dog to bite the officers. At the same time, Houde was growling himself and trying to bite Officer Gunnerson's hand, which was under Houde's body. Officer Gunnerson yelled to his fellow officers to get the dog away. Fearing

5

that he would be bitten by either the dog and/or Houde if he was not able to get his arm out from under Houde and get some distance between himself and Houde, Officer Gunnerson struck Houde in the side of his face. The blow had no effect on Houde. So, Officer Gunnerson struck Houde again in the same area, which startled him long enough for Officer Gunnerson to pull his arm out from under Houde's body. Yet, Houde continued to resist.

At this point, Officer Duffy warned Houde that he would be sprayed with OC spray if he did not comply. Houde ignored the warning. As a result, Officer Duffy sprayed Houde in the face. Houde finally stopped struggling/resisting, which allowed the other officers to handcuff him. A patrol wagon arrived soon after Houde was handcuffed and transported him to the station. Houde was then transported to the hospital for treatment for a laceration to his eye and other swelling and bruising that had developed, as well as for the effects of the OC spray.

When Houde was returned to the police station, he was booked, photographed, fingerprinted and placed in a cell. Houde was charged with illegal possession of a class B substance, 4 counts of assault and battery on a police officer, resisting arrest, failure to stop for a police officer, illegally attaching plates, operation of an

unregistered motor vehicle, and operation of an uninsured motor vehicle.

After Houde was handcuffed, a few of the officers searched the Grafton Street area for the female passenger that had fled on foot. She was apprehended in a bar on Grafton Street. She was charged with assault and battery on a police officer, disorderly behavior, disturbing the peace, and resisting arrest. She also had an outstanding warrant for unlicensed operation of a motor vehicle and speeding. Houde pled guilty to the criminal charges against him, including assault and battery on police officers (3 counts), failure to stop for a police officer, resisting arrest, assault and battery with a dangerous weapon (shod foot), illegal possession of a controlled substance, improperly attaching license plates, operating an uninsured motor vehicle, and operating an unregistered motor vehicle.

Several of the officers who had been exposed to the OC spray and to Houde's blood met an ambulance in the Kelly Square area of Worcester where they were treated and cleaned up. Additionally, Officer Turgeon was treated for an injury to his hand and Officer Halloran was treated for a contusion to his forearm and an abrasion to his elbow.

Neither Turgeon nor Halloran sought additional treatment from a hospital or physician for their injuries.

On May 20, 2002, Houde put the Defendants in what they perceived to be a very dangerous situation by pulling his camper into a dark and secluded parking lot. Moreover, Houde's suspicious behavior in locking his doors and keeping his windows rolled up, keeping his hands in his waist area as if he were hiding something or reaching for something, and in refusing to provide a license and registration when asked to do so contributed to the officers' perception that their safety was at risk. Furthermore, it is the officers' belief based on experience in law enforcement that Houde was under the influence of a controlled substance because he showed almost super-human strength in fighting with them. Thus, as a result of Houde's violent struggling and complete disregard of the officers' verbal commands, the officers justifiably used force to subdue and arrest Houde. The evidence will show that the officers' actions were reasonable, justifiable and that they used the amount of force that was reasonable and necessary to effectuate Houde's arrest. Moreover, the officers did not conspire to use excessive force, nor is there evidence of any such conspiracy.

**STATEMENT OF FACTS ESTABLISHED BY THE PLEADINGS, BY ADMISSIONS, OR BY STIPULATIONS**

Defendants stipulate to the following facts as presented in Plaintiff's Pretrial Memorandum: 1 through 10, 24, and 26. Defendants object to the remaining facts in Plaintiff's Pretrial Memorandum, as they are in dispute and/or are irrelevant as they pertain primarily to Plaintiff's interference with prospective business relations claim, which was dismissed.

The following additional facts have been established by the pleadings, admissions or stipulations:

As a result of the incident of May 20, 2002, Plaintiff Daniel Houde pleaded guilty to all of the charges brought against him: (1) illegal possession of a controlled substance; (2) assault and battery with a dangerous weapon (shod foot); (3) three counts of assault and battery on a police officer; (4) resisting arrest; (5) failure to stop for a police officer; (6) improperly attaching license plates; (7) operating an uninsured motor vehicle; and (8) operating an unregistered motor vehicle.

**CONTESTED ISSUES OF FACT**

1. The nature and extent of the use of force used by the individual Defendant police officers is contested, as

9

Plaintiff's version of events has changed throughout the case, including in Plaintiff's Pretrial Memorandum.

2. All evidence with respect to Plaintiff's hot dog cart business, including alleged business dealings with the owners of the Palladium, is contested.

3. Plaintiff's purported reason for pulling off of Grafton Street into a dark parking lot while being pursued by police officers is contested.

4. All evidence with respect to any alleged vendetta against Plaintiff by the Worcester Police generally and the individual Defendant police officers specifically is contested.

5. Plaintiff's recitation of Worcester Police Department policies is inaccurate and, therefore, contested.

6. While Plaintiff's Pretrial Memorandum does not articulate a statement of damages, Defendants' contest the nature, extent and cause of any alleged damages by Plaintiff.

**JURISDICTIONAL QUESTIONS**

None.

**QUESTIONS RAISED BY PENDING MOTIONS**

None pending. However, motions in limine will be filed prior to trial in this matter.

**ISSUES OF LAW**

None pending. However, motions in limine will be filed prior to trial in this matter.

**REQUESTED AMENDMENTS TO THE PLEADINGS**

None.

**ADDITIONAL MATTERS TO AID DISPOSITION OF THE ACTION**

Defendant is amendable to additional mediation.

**PROBABLE LENGTH OF TRIAL**

4 to 5 days.

**DEFENDANTS' WITNESSES**

Defendants incorporate herein the witnesses named in Plaintiff's Pretrial Memorandum, exclusive of witnesses (e) through (g), unless needed as rebuttal witnesses, and Defendants further reserve the right to call additional rebuttal witnesses.

In the event that Worcester Police Department policies, procedures, training or related issues become an issue at trial, Defendants reserve the right to call the appropriate Worcester Police Department employee to address said issue, including but not limited to Chief of Police Gary Gemme.

Defendants' Additional Witnesses:

1. Worcester Emergency Medical Systems, UMass/Memorial Health Care, Worcester, MA – treatment of officers following Plaintiff's arrest on May 20, 2002.

2. Worcester Police Dispatcher, 9-11 Lincoln Square, Worcester, MA – transmissions relative to Plaintiff's arrest on May 20, 2002.

3. John Fisher and Mr. Souza, Worcester, MA – circumstances of alleged business relationship with Plaintiff in the event Plaintiff is permitted to introduce evidence of business relations as a purported motive for Plaintiff's arrest or for some other purpose.

4. Shrewsbury, Grafton and State Police Officers involved in a similar incident involving Plaintiff in September 2004, wherein Plaintiff failed to stop for police officers, failed to cooperate and resisted arrest.

**PROPOSED EXHIBITS**

The parties will confer and submit a separate proposed exhibit list. Accordingly, Defendants contest the proposed exhibits identified in Plaintiff's Pretrial Memorandum, as they have not yet been viewed in their entirety and agreed upon.

```
                              Respectfully submitted,

                              ROBERT TURGEON, STEPHEN
                              GUNNERSON, KEVIN JOHANSON,
                              MATTHEW D'ANDREA, BRIAN
                              HALLORAN, THOMAS C. DUFFY,
                              And CITY OF WORCESTER,

                              By their attorneys,

                              David M. Moore
                              City Solicitor


                              /s/ Janet J. McGuiggan
                              Janet J. McGuiggan
                              Assistant City Solicitor
                              City Hall, Room 301
                              455 Main Street
                              Worcester, MA 01608
                              (508) 799-1161
                              BBO #630013
```

CERTIFICATE OF SERVICE

I, Janet J. McGuiggan, hereby certify that the within document was filed on this 3d day of January, 2008 through this Court's ECF filing system with a copy sent to all registered participants.

/s/ Janet J. McGuiggan